## Fague's Estate.

*Executors and administrators—Decedent's estates—Assets—Jurisdiction of orphans' court.*

Where an administrator has charged himself with funds, the prima facie presumption is that such funds are assets belonging to the estate of the decedent, and the orphans' court has jurisdiction over them. Any one claiming that such funds are a trust estate, has upon him the burden of proof, and it is incumbent upon him to establish his allegation by the quantum and quality of proof which will move a chancellor to decree a trust.

*Auditor—Auditor's findings of facts.*

The findings of an auditor upon questions of fact which have been approved by the court below will not be disturbed on appeal except for plain error.

Argued Feb. 12, 1902. Appeal, No. 9, Feb. T., 1901, by James P. Miller, from decree of O. C. Lycoming Co., Sept. T., 1900, No. 20, dismissing exceptions to auditor's report in Estate of Abner Fague, Deceased. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Exceptions to report of William H. Spencer, Esq., auditor.

James P. Miller claimed before the auditor the sum of $194.42 represented by a check which had been delivered to the administrators by the Union Tanning Company. The check had been given in payment of certain oak bark which Miller claimed had been sold to him individually, and not to the Union Tanning Company. The auditor found the facts as to this claim to be as follows:

" Prior to the death of Abner Fague, the decedent, on June 24, 1900, was the owner of about forty tons of rock oak bark. For a number of years previous, he had been indebted to the exceptant, James P. Miller, which indebtedness was represented by a note or notes, discounted at the Hughesville National Bank, Hughesville, Pa. From the evidence it appears that the proceeds of the first note representing the indebtedness were passed to the credit of James P. Miller, the exceptant, so that the decedent's liability was primarily to said bank and only secondarily to said exceptant. From time to time this

note was renewed and reduced until May 16, 1900, when the last renewal note for $200 was given. On that day, the decedent was at the office of the Muncy Valley tannery, one of the branches of the Union Tanning Company, whither he had gone for the double purpose of securing Miller's indorsement upon the said renewal note, and of selling his oak bark. The exceptant was then and for years prior thereto had been superintendent of said Muncy Valley tannery. As such it was his business, among other things, to purchase oak bark for the use of the tannery. To him the decedent offered to sell his bark consisting of about forty tons, at $5.50 per ton. The offer was accepted and a contract for the sale of the bark was consummated, delivery to be made to the Muncy Valley Tannery. In June, 1900, and under the direction of Mr. Horton, the president of the said Union Tanning Company, the decedent shipped the bark to the Middlebury tannery of said company in Tioga county. Upon the books of said company the bark was placed to the credit of the decedent, and in July, 1900, a statement of his account, with check for $194.42, the amount thereof, was mailed to him. Before it reached him, he was dead, and the check and statement were returned by his administrators to said company, who returned to them a new check to their order for the same amount. This is the check which was included by them in the inventory and final account, and which forms now the ground of exception."

The auditor disallowed the claim, and exceptions to his report by Miller were dismissed by the court.

*Errors assigned* were in dismissing exceptions to auditor's report.

*Otto G. Kaupp*, for appellant.

*W. E. Crawford*, for appellee.

PER CURIAM, March 14, 1902:

The general rule is that only those who claim through the decedent, as creditors, legatees or next of kin, have any standing in a distribution proceeding in the orphans' court. The appellant's contention is that this general rule does not apply

where the fund is wrongfully included in the account, either because, though, in the name of the decedent, it is really a trust, or because the title is in another person. Granting this, the prima facie presumption is that funds accounted for by an administrator as assets of the estate belong to the estate. Even in the absence of such legal presumption the actual inference from the circumstances of this transaction, if unexplained, would be that the fund represented by the $194 check belonged to the decedent. The burden of proving a trust rested on the appellant. It was not sufficient for him to raise a doubt as to the ownership of the fund, but it was incumbent on him to establish his allegation by the quantum and quality of proof which would move a chancellor to decree a trust. We cannot say that the auditor who heard and saw the witnesses, erred in refusing to find that the decedent sold the bark to the appellant, not as agent of the Union Tanning Company, but individually, that the delivery made subsequently by the decedent to the company was upon the appellant's account, and that the proceeds of the sale of the bark represented by the check in question belonged to the latter. In the absence of clear and convincing proof of these facts the appellant had no standing to claim the fund. The questions of fact are so thoroughly and satisfactorily discussed in the report of the auditor and the opinion of the court below, as to render separate discussion of the assignments of error unnecessary. That the findings of an auditor upon questions of fact, which have been approved by the court below, will not be disturbed on appeal except for plain mistake, is so well settled as not to require the citation of authority.

All the assignments of error are overruled, the decree is affirmed and the appeal dismissed at the costs of the appellant.