vendoℓ, was sufficient notice to the vendee that he was unable to per-form his contract of sale to her. When that action terminated in a judgment under which the vendee lost possession of the property, that judgment would relate back to the time of the commencement of the action, and the court should have held that the contract was broken by the vendor at that time. If strict performance of the contract by the vendee was waived, as the case above cited would seem to hold, and the contract was broken by the vendor on the 5th of February, 1908, plaintiff was entitled to maintain this action and recover back the money that she paid.

---

### NOTMAN et al. v. GALVESTON S. S. CO.

(Supreme Court, Appellate Division, Second Department. April 22, 1910.)

1. SHIPPING (§ 22*)—SHIP'S BROKER—COMPENSATION—CONTRACT.
   Ship brokers' services in procuring the execution of a charter would be a sufficient consideration for an agreement by the owner to pay the brokers a stated commission upon the gross amount of the charter.
   [Ed. Note.—For other cases, see Shipping, Dec. Dig. § 22.*]

2. SHIPPING (§ 22*)—SHIP'S BROKER—COMPENSATION—SERVICES PERFORMED.
   If ship brokers' services in procuring the execution of a charter party were rendered with the owner's knowledge, and he accepted the benefits thereof, an action on quantum meruit would lie by such brokers for the value of their services.
   [Ed. Note.—For other cases, see Shipping, Dec. Dig. § 22.*]

3. SHIPPING (§ 22*)—SHIP'S BROKER—COMMISSIONS—CONTRACT—PARTIES.
   Ship brokers could not rely upon a statement in a charter party, the execution of which they procured between the owner and the hirer, that a certain commission upon the gross amount of the charter was due to the brokers, as an agreement to pay such commissions to them; they not being parties to the charter.
   [Ed. Note.—For other cases, see Shipping, Dec. Dig. § 22.*]

4. SHIPPING (§ 22*) — SHIP'S BROKER—COMMISSIONS—CONTRACT — CONSIDERATION.
   Where ship brokers who concluded negotiations for the owners for a charter party were under no obligation to procure the extention of the original charter party, any agreement contained in the charter party executed by the owner and the hirer to pay the brokers commissions on the hiring for the extension would not be supported by a consideration.
   [Ed. Note.—For other cases, see Shipping, Dec. Dig. § 22.*]

Appeal from Trial Term, Kings County.

Action by Charles P. Notman and another against the Galveston Steamship Company. From an order granting a new trial, plaintiffs appeal. Affirmed.

Argued before HIRSCHBERG, P. J., and BURR, RICH, and CARR, JJ.

Everett P. Wheeler, for appellants.
J. M. Woolsey (J. Parker Kirlin, on the brief), for respondent.

BURR, J. Plaintiffs are ship brokers, doing business under the firm name of "J. W. Elwell & Co." The complaint alleges, and the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

answer failing to deny admits, that on or about December 30, 1905, they, acting as such brokers, concluded in behalf of defendant negotiations for a charter of the steamship Galveston to one A. B. Wolvin, and on that day a charter party was executed. This charter party specified the time of the hiring to be "for three months, option of three more months," and also contained a clause:

"14. That the charterers shall have the option of continuing this charter for a further period of three months as above, to be declared on or before March 15th, time to commence expiration of present charter."

Still another clause contained the following words:

"26. A commission of five per cent. upon the gross amount of this charter payable as earned by the steamship and owners, due to Jas. W. Elwell & Co., upon the signing hereof, steamship lost or not lost, and also upon any continuation or extension of this charter."

There was some conflict of evidence upon the point whether the option referred to was exercised or not. So far as plaintiffs are concerned it is immaterial, since they base their claim upon the fact that on or about March 12, 1906, another agreement was executed between defendant and said Wolvin, by which the said steamship was chartered for a year, and which agreement they claim was a continuation or extension of the original charter party. This action was brought to recover commissions upon the amount of hire received by defendant under the latter agreement. The court directed a verdict for plaintiffs, but thereafter granted defendant's motion to set it aside and for a new trial, and from the order then entered this appeal is taken.

We think that the order is right, and should be affirmed. Even if the charter party of March 12, 1906, was an extension of that of December 30, 1905, there is no evidence of any valid contract to pay plaintiffs a commission in connection with such extension. The complaint alleges that the execution of the original agreement was the result of plaintiffs' efforts; and, this being admitted, these would constitute a sufficient consideration for defendant's promise to pay commissions on the hire reserved thereby, or, in the absence of such promise, would support an action on quantum meruit if such services were rendered with defendant's knowledge, and followed by an acceptance of the benefits thereof. But the original charter party itself was not an agreement to pay such commissions, for plaintiffs were not parties to it. The most that could be said respecting it is that it is some evidence by way of admission respecting such an agreement. Much less could it be deemed an agreement to pay commissions during any additional period. Plaintiffs have not only failed to plead the existence of such an agreement; but, if they had pleaded it, the promise to pay would be unsupported by any consideration, since plaintiffs were under no obligations to do anything to bring about any extension of the original charter party, and if the agreement of March 12, 1906, could be deemed such an extension, the evidence establishes without contradiction that plaintiffs had nothing whatever to do with the negotiation or the execution of it. But if a valid contract with plaintiffs as to such extension had been pleaded and proved, we think that the latter charter party was not a continuation or extension of the former one. It

is true that the subject-matter was the same, and that the amount of hire was fixed at the same sum per month; but in several other essential particulars the terms and conditions of the hiring differed, and the minds of the parties did not meet as to those matters until after some considerable negotiation, which was had between the parties directly and not through the acts of plaintiffs.

The order should be affirmed, with costs. All concur.