## Launikitas *v.* The Wilkes-Barre, Etc., Traction Co., Appellant.

*Evidence—Cross examination—Irrelevant matters—Contradiction of witnesses.*

Where in an action to recover damages for personal injuries sustained by an infant plaintiff in consequence of being run over by defendant's trolley car, the testimony of plaintiff's chief witness tended to show that defendant was negligent and on cross-examination the witness testified as to various irrelevant and immaterial matters, and the defendant then offered evidence to contradict the witness on these immaterial points, such evidence is properly excluded; if the truthfulness of the witness was to be attacked, it should have been by showing a bad reputation for truth and veracity in general.

Argued April 15, 1913. Appeal, No. 50, Jan. T., 1913, by defendant, from judgment of C. P. Luzerne Co., Feb. T., 1909, No. 243, on verdict for plaintiff in case of William Launikitas, by his next friend and father, Matthias Launikitas, and said Matthias Launikitas, each in

his own right, v. The Wilkes-Barre & Wyoming Valley
Traction Company.  Before BROWN, MESTREZAT, POTTER,
ELKIN and MOSCHZISKER, JJ.  Affirmed.

Trespass to recover damages for personal injuries.
Before O'BOYLE, J.

The opinion of the Supreme Court states the facts.

Verdict for infant plaintiff for $4,000, and judgment
thereon.  Defendant appealed.

*Errors assigned* were in excluding certain evidence.

*Paul Bedford,* with him *Frank A. McGuigan* and *John
T. Lenahan,* for appellants.

*James L. Lenahan,* with him *James McQuade,* for ap-
pellee.

OPINION BY MR. JUSTICE POTTER, June 27, 1913:

The only question raised upon this appeal relates to
the action of the trial court in rejecting certain evidence
offered by the defendant.  On the trial plaintiff called
as a witness Mrs. Annie Thompson, who testified that
she had seen the accident, and described the circum-
stances under which it occurred. Her testimony tended
to show negligence on the part of the motorman.  On
cross-examination she testified as to her name, and that
of her husband; she stated she had a former husband
named Oleski, who was dead, and that she was after-
wards married to John Thompson by a priest in Kings-
ton; that she never went by the name of Annie Glick or
Annie Lecht; that she never bought goods from a man
named Honeywell; that she never rented from a man
named Berthoff.  As to these various matters which
were neither material nor relevant to the issue being
tried, counsel for defendant offered testimony tending to
contradict the witness.  One offer was to show by the
priest whom she said had married her, that no such cere-

mony was ever performed by him between Annie Oleski and John Thompson, and they were never married in his church. There was also an offer to show business deal-ings between the witness, who called herself Annie Thompson, and a man named Honeywell, and also with a man named Berthoff. The exclusion of these offers of evidence is assigned as error. We think the trial judge took the correct view. The general rule is that when a witness has been cross-examined upon matters not rele-vant to the issue, he cannot be discredited by proof that he testified falsely as to the irrelevant matters. This rule, with its reasons, is fully set forth in Griffith v. Eshleman, 4 Watts 51. Mr. Justice KENNEDY there said (p. 53) : "If such a course were to be tolerated, for the purpose of afterwards impeaching the testimony of the witness by contradicting him in case he should answer in the negative, it would render the inquiry, as Mr. Starkie very justly observes, which ought to be single and confined to the matter in issue, intolerably compli-cated and prolix, and cause it to branch out into an in-definite number of collateral issues: 1 Stark. Ev. part 2, 135; Spenceley v. DeWillott, 7 East. 108; Odiorne v. Winkley, 2 Gall. 51. Besides the danger of rendering the trial of a cause interminable by such testimony, it is very obvious that the jury may likewise be readily and greatly misled by it, and induced to give a verdict fraught with the highest degree of injustice." In the opinion of this court in Erie Railway Co. v. Decker, 78 Pa. 293, Mr. Justice GORDON, with reference to a state-ment made by a witness on cross-examination, said (p. 295) : "Now, as this answer was irrelevant to the issue trying, and as there was nothing in the examination in chief which could properly induce a cross-examination productive of it, the plaintiff, who drew it out, was bound by it, and ought not to have been permitted, under a pretense of contradicting it, to throw evidence into the case, which, whilst prejudicial to the defense, was for-eign to the matter in controversy." And again in Hester

v. Com., 85 Pa. 139, Mr. Justice WOODWARD said, quoting 1 Greenleaf's Ev., para. 449 (p. 157) : "If a question is put to a witness which is collateral or irrelevant to the issue, his answer cannot be contradicted by the party who put the question, but it is conclusive against him." In Com. v. Payne, 205 Pa. 101, this court, speaking by Mr. Justice MITCHELL, condemned the "vicious practice" which he said at one time had a considerable hold in some states, of allowing indiscriminate attacks upon the general character and private life of adverse witnesses, under the pretense of "letting the jury know who the witness is." If the truthfulness of the witness was to be attacked, it should have been by showing a bad reputation for truth and veracity in general. In Wike v. Lightner, 11 S. & R. 198, Mr. Chief Justice TILGHMAN said (p. 199) : "In order to discredit a witness, you can examine only as to his general character." And in Snyder v. Com., 85 Pa. 519, Mr. Justice MERCUR said (p. 522) : "Character can be impeached only by evidence of general reputation, and not by evidence of particular acts of misconduct." Under the authority of these cases the proffered testimony was properly excluded by the trial judge.

The assignments of error are overruled and the judgment is affirmed.