## Congress Coal & Transportation Co., Appellant, *v*. International Steamship Co.

*Contract—Charter party—Ship brokers—Commissions for procuring charter party—Acknowledgment of contract.*

1. In an action by a ship broker against a ship owner for commissions for procuring a charter party, plaintiff is not entitled to recover where he does not rely on a parol agreement or on a promise implied by law to pay for his services, but wholly upon an express agreement in the charter party, which is stated by plaintiff to be the final agreement in writing, and it appears that the charter party, prepared by plaintiff, but in which plaintiff was not a party, while stating the amount of the commissions to be paid to plaintiff does not in any way provide for payment thereof by defendant to plaintiff, but implies by its language that the commissions were to be paid by the charterer.

2. In such case, plaintiff cannot claim that in the charter party was to be found an acknowledgment of the contract by defendant and its agreement to pay commissions to plaintiff, where there is no evidence in the case to show that defendant either expressly or by implication agreed to pay the commissions to plaintiff.

Argued January 27, 1925.    Appeal, No. 157, Jan. T., 1925, by plaintiff, from judgment of C. P. No. 3, Phila. Co., June T., 1920, No. 21, on verdict for defendant, in case of Congress Coal & Transportation Co., Inc., *v*. International Steamship Co.    Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.    Affirmed.

Assumpsit by ship broker against ship owner for commissions.    Before DAVIS, J.

The opinion of the Supreme Court states the facts.

Judgment on directed verdict for defendant.    Plaintiff appealed.

*Error assigned* was direction for defendant, quoting record.

*Walter Biddle Saul,* of *Saul, Ewing, Remick & Saul,* with him *Edward A. G. Porter* and *Howard M. Long,* for appellant.—The contract of employment between defendant and plaintiff was absolutely established without reference to the charter party. The charter party merely fixed the amount of the commission. The suit was not on it, but on the express agreement of employment, which was admitted by the pleadings.

The fallacy which runs through the argument of defendant and the rulings of the trial judge is the result of the inability to see anything in the case other than the charter party and the failure to realize that everything that the court and the defendant insisted was essential, was present in its most binding form, to wit: by way of admission in the pleadings that the contract of employment existed.

The provision in the charter party that the hire is to be paid "less chartering commission" indicates only one thing, and that is that defendant appointed the charterer its agent to disburse the chartering commissions. The very fact that the hire was to be paid "less chartering commission" shows that the money was ultimately to be paid by defendant.

*Otto Wolff, Jr.,* with him *Hunt, Hill & Betts* (of New York), and *Lewis, Adler & Laws,* for appellee.—Appellant failed to offer any evidence of the alleged specific agreement with appellee on which the suit was based.

In no sense was this charter party an agreement made for the benefit of appellee, it was an agreement which sets forth the mutual rights and obligations between appellee, as owner, and Cragin & Company, as charterer, with respect to the chartered vessel, and was not a contract on which appellant could maintain an action against appellee: Edmundson's Est., 259 Pa. 429.

It is solely because of the absence of an express agreement that the law, in order to provide a remedy, sometimes implies a promise; but if a plaintiff admits that

an express agreement was made, he is necessarily bound to prove the same, for in such a case the mutual rights and obligations of the parties depend altogether on the terms of their agreement: Hawkins v. United States, 96 U. S. 689.

OPINION BY MR. JUSTICE SCHAFFER, March 16, 1925:

Plaintiff, a ship broker, brought this action against defendant, a vessel owner, to recover commissions for negotiating a charter for a steamer. The trial judge gave binding instructions for defendant; plaintiff appeals.

Appellant endeavored to make out its case in chief entirely from certain paragraphs of its statement of claim which were admitted by the affidavit of defense. The facts thus spread upon the record were these: Plaintiff is engaged in the business of acting as a ship broker and ship agent; defendant in that of owning and chartering ships. During the month of October, 1919, defendant by its duly authorized agent, Suzuki & Co., requested plaintiff to secure a charter for the steamship Yayoi Maru, owned by defendant. Pursuant to the instructions and employment by defendant, plaintiff did negotiate a charter for the steamship, which was executed and approved by defendant. The statement of claim referred to the charter party for the vessel, a copy of which was attached to the statement. The charter party was executed by Suzuki & Co., as agents for defendant, and by Cragin & Co., Inc., the charterers; plaintiff is not a party to it. The document recites that the owners agree to let and charterers to hire the vessel for the term of twelve calendar months from a date named; that the charterers shall pay for the use and hire of the vessel at the rate of $9.50 on her dead weight tonnage per month "Payments hire in advance in cash in New York to Messrs. Suzuki & Co. without discount *but less chartering commission,"* with this additional provision as to the commissions: "A commission of one (1)

per cent on the estimated gross amount of freight or hire is due to Cragin & Co., New York, and one (1) per cent to Congress Coal & Transp. Co., and one (1) per cent to J. & R. Young......"

It will be seen that there is nothing in the charter party requiring defendant to pay the commission. It stipulates that the hire of the vessel is to be paid to Suzuki & Co., agents of the owners "less chartering commission." This raises the inference that the commission was to be paid by the charterer, if any inference as to who should pay it is to be drawn from the instrument. As plaintiff refers to the charter party for evidence of what the contract between it and defendant was and as that paper fails to show anything placing an obligation on defendant to pay plaintiff's commission, the plaintiff did not advance its proofs far enough to warrant a recovery.

In the statement of claim, plaintiff did not base its right of recovery on a promise implied by law to pay for its services, but, upon an express agreement to pay, setting forth in paragraph 5 of the statement, "It was *specifically agreed* between the parties hereto [plaintiff and defendant] that the commission of the plaintiff...... should be one per cent on the estimated gross amount of freight or hire......and the said agreement as to commissions was included in the said charter party to which reference is here made"; but the charter party is silent so far as providing for payment by *defendant* to plaintiff. The statement further sets forth in paragraph 6, "The final agreement was in writing and embodied in the charter party, a copy of which is hereto annexed." If by this is meant that the terms of the agreement between appellant and appellee are set forth therein, the answer must be that they are not, except, that the amount of commission "due" to appellant is mentioned; there is no undertaking shown on defendant's part to pay it, the implication from the language of the charter party being that the commission was to be paid by the

hirers of the ship, not the owner. Furthermore, in the affidavit of defense, appellee denied that it agreed to pay appellant the amount claimed and hence the latter had explicit notice that it would be required to prove what it had declared,—a specific agreement to pay. Instead of showing such an undertaking, it proved by the charter party, not that the defendant was to receive the gross hire of the vessel, but that amount less chartering commission, which, so far as plaintiff is concerned, was set forth as one per cent on the gross hire,—such amount "is due to" plaintiff, says the charter party; but by whom it was due does not appear, and, manifestly, so far as that paper indicates, not by defendant.

We do not understand the position of appellant's counsel to be that his client is entitled to recover on the charter party contract to which it was not a party; this it could not do since it contained no promise for plaintiff's benefit (Cherry v. Peoples Trust Co., 282 Pa. 52; Klingler v. Wick, 266 Pa. 1, 5; Mundorff v. Board of School Directors, 4 Pennypacker 103; Morgan Engineering Co. v. McKee, 155 Pa. 51) but that in the charter party is to be found an acknowledgment of the contract by defendant and its agreement to pay plaintiff. As hereinbefore pointed out, there is no such undertaking in that document so far as defendant is concerned. Stated in substantially the precise language of appellant's counsel, his position is that, standing alone, the charter party, providing for the payment of a commission to plaintiff, is not of itself sufficient to entitle it to sue thereon, because there is no contract on the part of the person to be charged to pay, but if there is other evidence of the contract charging defendant with the commission, then the charter party can be used as additional proof of the contract and to fix the amount of the commission; that the contract of employment between the plaintiff and defendant was established without reference to the charter party, which merely fixed the amount of the commission; and that the suit was not upon the charter party but

on the express agreement of employment which was admitted by the pleadings. The difficulty with this position is that, under the statement of claim, a specific agreement was averred and it was recited that "The final agreement was in writing and embodied in the charter party." The admission in the affidavit of defense was that the "defendant......requested the plaintiff to secure a charter for a steamship" and that "plaintiff negotiated a charter......which was duly executed and approved by......defendant" and that a copy of the charter party was annexed to the statement. The affidavit of defense denied everything else. These admissions did not carry into evidence a specific agreement; at the most they raised only an implied undertaking to pay and when the charter party, which it was averred embodied the final agreement in writing, took its place in the evidence, it showed no agreement whatever by defendant to pay, but the contrary by all the implications to be drawn from its language. Plaintiff relied for establishing the amount due to it upon the facts that the hire provided for in the charter party is fixed at $9.50 per ton per month on the steamer's total dead weight, that the charter states that the steamer has a dead weight capacity of 8,800 tons, and that the charter was to run for twelve months, making a total hire of $1,003,200, upon which plaintiff is entitled to a commission of one per cent.

At the conclusion of plaintiff's case, with its evidence consisting only of the admitted averments of the statement and the charter party, defendant moved for a nonsuit, which was refused. We think this motion should have prevailed, as plaintiff had not established its right to recover. It had failed to show what was the specific contract with defendant. When defendant advanced its evidence, it showed without contradiction that the charter party was prepared in the office of plaintiff and sent by it to the charterer for signature; hence plaintiff

itself had put in the contract the provision that the commission was to be paid by the charterer.

By depositions it developed that the representative of the manager of Suzuki & Co. (defendant's agents) in London had authorized the firm of Donald MacLeod & Company, ship brokers there, to represent defendant in connection with the chartering of the vessel, that Suzuki & Company's representative informed MacLeod & Company that the owners would require the commission to be payable on hire earned and that they would not be responsible to the brokers, that the latter must look to the charterer, who was to be authorized to deduct the same from the hire. This it will be noted is in effect the stipulation which plaintiff put in the charter party.

Donald MacLeod, of the firm of Donald MacLeod & Co., testified that negotiations for the chartering of the vessel were carried on between himself and John C. Jamison, of the firm of J. & R. Young & Co., agents for the charterer's brokers, that it was stipulated that the brokers were to receive their commission from the charterers, and that the commission would be paid only upon hire earned and that the owners would not be responsible to the brokers.

John C. Jamison, who said he acted as agent for plaintiff, deposed that he carried on the negotiations with Donald MacLeod & Co. for the chartering of the vessel and that it was his understanding that the plaintiff was to receive the commissions directly from the charterers. This witness further testified that his firm negotiated the charter for the vessel with Suzuki & Co., the owner's agent in London, and that the amount of commission and its division was discussed and it was agreed that the commission should be deducted by the charterers from the hire and paid by the charterers to the brokers. He further said that the charter party was executed in New York, because the charterers insisted upon it and that the steamer was not taken by the charterers and was subsequently withdrawn by the owners.

Sukeno, the representative in New York of Suzuki & Co., testified that the negotiations took place in their New York office, that the amount of the commission and how and by whom payable was discussed by him and a representative of plaintiff and that he stipulated on behalf of the owners that they were not to be liable for commissions to the brokers and that the brokers must look to the charterers for their commission, that the plaintiff's representative agreed to this and asked that the charter party should provide that the broker's commission should be deducted from the hire and paid by the charterers to the brokers, to which the witness assented, and that the representative of plaintiffs agreed that the commissions were only to be paid on hire earned and paid.

Cablegrams which were offered in evidence indicate that the negotiations for the chartering of the vessel were begun by the appellant, who instructed Young & Co. at Glasgow to make an offer for the vessel for the account of Cragin & Co. and that Young & Co. advised appellant that the owners had accepted the offer. In rebuttal, plaintiff offered testimony to show that Young & Co. were acting as agents for the owners at Glasgow and also called a witness, Williams, who was appellant's managing director at its New York office at the time the negotiations were conducted, who denied that he had the conversation with Sukeno, the representative of Suzuki & Co., to which the latter had testified. This was the only denial of any evidence offered by the defendant. This witness was not asked by appellant what the actual terms of the agreement were.

From what has been outlined, it will be seen that plaintiff did not show what the actual specific contract which it had averred in its statement was, but relied upon the charter party to establish it, which it did not do. Defendant's testimony exhibited the agreement and, as shown, it manifested that defendant was not obligated to plaintiff. Had the plaintiff by its evidence shown the contract as averred and had defendant shown other and

different terms, then it would have been for the jury to determine what was the actual contract, but appellant not having shown any contract there was nothing for the jury to consider. Without evidence in its behalf as to what the actual contract was, it could not be permitted that appellant should recover on the charter party simply because that paper provides that it shall receive a commission of one per cent.

The trial judge gave binding instructions for defendant and based his action on the admitted fact that the charter party was made in New York and was to be construed according to the law of that state, and upon the assumption that under the law of that state, as determined in Notman v. Galveston Steamship Co., 137 N. Y. App. Div. 851, 122 N. Y. Supp. 598, the recital in a charter party that a commission is due to ship brokers is not an agreement to pay the commission, where the brokers are not parties to the agreement. While there may be some question as to whether the law as announced by the courts in New York is precisely as the trial judge construed it and whether the charter party may not be used as evidence of what the contract was between the broker and the ship owner, if it sets forth the terms of the contract, we base our decision of affirmance of the court below upon the ground that plaintiff failed to establish its case.

Appellant's counsel in their printed brief state that the first assignment of error is the only one pressed; it challenges the right of the court to give binding instructions for defendant. We think the action of the court below was proper.

Judgment affirmed.