## Mathey to use *v.* Flory Milling Co., Appellant.

*Master and servant—Salary—Interruption of service by imprisonment—Evidence—Charge of court—Practice—Trial.*

1. In an action for salary, where evidence is introduced for the purpose of showing that plaintiff was imprisoned for twenty-one days during the period of his service, and not for the purpose of affecting his credibility, the trial judge commits no error in warning the jury that they should not use the incident of the imprisonment improperly with the thought of punishing plaintiff in the case before them for his act in avoiding the draft, and for which he had paid the penalty.

*Master and servant—Salary—Set-off—Alleged improper profits —Charge—Harmless error—Cross-examination.*

2. Where, in an action for salary, defendant alleges improper profits made by plaintiff in the course of his employment, and seeks to establish this by cross-examination of plaintiff, but fails, it is immaterial in what manner the alleged default is submitted to the jury, whether correctly or not. The error, if any, is harmless, since the court might have given binding instructions.

3. Though one is not concluded by the testimony of his opponent given under cross-examination, but is at liberty to call witnesses to impeach it and to show, if possible, that his statements

were not true, yet if, in point of fact, there is no such impeachment, the cross-examiner becomes bound by such testimony.

*Evidence—Answer not responsive to question—Striking out answer—Practice, C. P.*

4. A trial judge commits no error in striking out an answer to a question, where the answer is not responsive to the question put.

*Appeals—Assignments of error—Ruling on evidence—Exceptions.*

5. An assignment of error to a ruling on evidence will not be considered where the assignment shows no exception to the ruling.

*Evidence—Witness—Credibility—Special dereliction—Direct contradiction.*

6. Ordinarily a witness's credibility cannot be attacked, under the pretense of letting the jury know who the witness is, by showing special dereliction on his part, but only by direct contradiction, or by showing a special animus or prejudice on his part, or by showing his bad reputation for truth and veracity in general.

*Appeals—Assignments of error—Evidence—Exclusion of evidence—Exceptions.*

7. An assignment of error to the exclusion of evidence is insufficient, which shows a reference in the charge to such conclusion, but no rulings excluding the evidence, nor exceptions to such rulings.

*Appeals—Charge—Alleged insufficiency of charge—Failure of counsel to call court's attention to alleged insufficiency.*

8. Where the subject-matter of an assignment of error was called to the attention of the court by appellant's counsel, and the court presented the matter to the jury, the appellant cannot complain of the insufficiency of the presentation, where the record shows that his counsel did not object or take any special exceptions, but immediately proceeded to other matters.

*Appeals—Assignments of error—Inadequacy of charge—Failure to request for further instructions.*

9. Appellant cannot complain of the inadequacy of the charge as to the weight of the evidence, where it appears that the charge contained a general and correct instruction on such question, and appellant's counsel did not ask for further or more explicit instructions on the point.

Argued April 13, 1925.   Appeal, No. 11, Jan. T., 1926, by defendant, from judgment of C. P. Lackawanna Co.,

Jan. T., 1920, No. 266, on verdict for plaintiff, in case of J. W. Mathey to use of S. B., C. B. and J. H. Price v. Flory Milling Co.  Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.  Affirmed.

Assumpsit for salary.  Before MAXEY, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $3,065.40.  Defendant appealed.

*Errors assigned* were various rulings and instruction, quoting record.

*Everett Kent,* of *Kent & Rockwell,* with him *George W. Benedict,* for appellant, cited: Hart v. Girard Boro., 56 Pa. 23; Allegheny By-P. Co. v. Hillman & Sons Co., 275 Pa. 191; Bergner v. Bergner, 219 Pa. 113; Bachrach v. Fleming, 269 Pa. 350.

*J. H. Price,* with him *S. B. Price* and *C. B. Price,* for appellee, cited: Walkinshaw's Est., 275 Pa. 121.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, May 4, 1925:

In July or August, 1918, J. W. Mathey, the legal plaintiff, hereafter referred to as "plaintiff," entered the employ of the Flory Milling Company, defendant and appellant, to look after its business interests in Scranton, Pa., as local manager and sales agent, agreeing to devote his entire time to the fulfillment of these duties.  The contract of employment was not reduced to writing, and the parties thereto gave different versions of its terms, particularly concerning the compensation to be paid plaintiff; but the issues thus arising, and others involved, were submitted to the jury, and, since plaintiff gained the verdict, we must assume they were found in his favor.

The first assignment of error complains of a ruling by the trial judge, striking out certain evidence. It appears that, during the course of plaintiff's employment, he was arrested by the United States authorities for "avoiding the draft," and, on conviction, spent about twenty-two days in jail. The exact nature of his offense is not made clear in the testimony, though a liberal cross-examination was allowed defendant's counsel. When Harry E. Flory, defendant's treasurer, was on the stand, for cross-examination by plaintiff, he stated in reply to a question asked by counsel for defendant, "I can't just fix the date of that; I was woke up to the fact when he [plaintiff] was taken down to Harrisburg on a misrepresentation of his age on a questionnaire." Counsel for plaintiff objected and the court sustained the objection, stating: "You do not have to tell about his questionnaire; I will strike that out." In the first place, the reply objected to and stricken out was not responsive to the question put, and, in the next place, the assignment shows no exception to the ruling; nothing further need be said.

The next assignment complains of an excerpt from the charge, wherein the trial judge, referring to the incident of plaintiff's arrest, warned the jurors that, even though they believed he might have been "deficient in patriotism," this fact did not necessarily make him a perjurer, and it was not their office to visit punishment on plaintiff for an offense which he may have committed against the United States government, adding that his service in jail had "paid that debt." In considering this assignment it must be kept in mind that, so far as the record indicates, the testimony concerning plaintiff's draft dereliction and its consequences was adduced (as stated by the court below during the course of the trial, and not then disclaimed by defendant's counsel) "for the purpose of showing that he [plaintiff] was off duty for a certain number of days," when he should have been serving the interests of his employers; and the subject was developed by plaintiff "for the purpose of showing that,

when Mr. Mathey returned, there was no objection made
by Mr. Flory," and the former immediately resumed the
performance of his duties in defendant's employ. Not-
withstanding the fact that the evidence was admitted
and developed for the purposes just indicated, appellant
argues the present assignment as though the evidence
had been offered to affect plaintiff's credibility as a
witness on his own behalf and the court had unduly
minimized the weight which should have been given it
to that end. This attack no doubt was suggested to ap-
pellant by an instruction of the trial judge (not, how-
ever, assigned as error), which deals with the evidence
now under discussion, where he said: "In Pennsylvania
we allow counsel to ask a witness questions whose an-
swers may reflect upon his credibility in some way, and
counsel had a right to bring that out for two reasons,
first, to show that for twenty-two days, at least, he
[plaintiff] was not attending to the business of the
Flory Milling Company, and, next, as affecting his credi-
bility." While, as already noted, the record before us
indicates that the testimony which we are now consider-
ing was not introduced to affect plaintiff's credibility, yet
the trial judge was quite within his rights when, in the
passage referred to at the beginning of this paragraph,
he warned the jurors that, in their deliberations, they
should not use the incident of plaintiff's jail sentence im-
properly,—that is to say, with the thought of punish-
ing him in the present case; and, in the passage last
above quoted, the court went further in defendant's
favor than it had a right to expect, when the trial judge
spoke of the possible effect of this incident on plaintiff's
credibility. The law is established in Pennsylvania that,
ordinarily, one's credibility cannot be attacked, "under
the pretense of letting the jury know who the witness
is," by showing special derelictions on his part, but only
by "direct contradiction, or by showing a special animus
or prejudice on the part of the witness......or by show-
ing his bad reputation for truth and veracity in general"

(Com. v. Payne, 205 Pa. 101, 104; see also Ramsey v. Johnson, 3 P. & W. 293, 294; Com. v. Williams, 209 Pa. 529, 530; Launikitas v. Wilkes-Barre, etc., Traction Co., 241 Pa. 458, 461; Marshall v. Carr, 271 Pa. 273, 274); and nothing appears to take the present case out of this rule.

The third assignment has reference to a long excerpt from the charge, relating to a set-off claimed by defendant. Defendant alleged that plaintiff had agreed to act as its agent in the purchase of a piece of real estate in Scranton, but, in breach of good faith, had acquired the property for $10,000, charging his principal $15,000, and thereby gaining an unlawful profit for himself of $5,000. When it came to the proofs defendant relied on testimony elicited, by cross-examination, from plaintiff; but, unfortunately for appellant, plaintiff denied all allegations of bad faith or that he had made an improper profit on the transaction in question; and his evidence was not impeached. He testified that he had purchased the property from a real estate agent named Carpenter at least six months before he knew Mr. Flory, who had employed him for defendant company, and sometime prior to entering into its service; that the property had been acquired by him for $11,000, and he had "turned it over to Harry E. Flory, (not the Flory Milling Co.)" for $15,000, making a profit, which he admitted, of $4,000. He did not deny that this latter transaction occurred during the period of his employment by defendant company, but claimed that prior thereto he had informed Mr. Flory that the property belonged to him, plaintiff; finally, in this connection, plaintiff asserted there had been no deception or overreaching on his part. He said that he had made several payments on the property before its transfer to Mr. Flory, and therefore owned the equitable title, though the legal title remained in the name of Carpenter. He admitted that, prior to the date when the property was put in the name of Flory, he had made a payment of $300 with money paid him by the

latter, but said this payment was made at the suggestion of Flory, who, at that time, knew of plaintiff's ownership. He also admitted that, while title to the property was taken in Mr. Flory's name, the $15,000 was paid by the Flory Milling Company. Plaintiff's testimony was corroborated in its main features by Carpenter. The only answer of defendant was a statement made by its witness Flory, who testified that he had not received any of the $4,000 profits which plaintiff realized on "the real estate deal," and that he first "took up" with Mr. Mathey the matter of the purchase of the property in the fall of 1918 "after the latter was hired" by defendant company. In Dunmore v. Padden, 262 Pa. 436, construing the Act of May 23, 1887, P. L. 158, we said that, though one was not concluded by the testimony of his opponent given under cross-examination, but was at liberty to call witnesses to impeach it and to show, if possible, that his statements were not true, yet if, in point of fact, there was no such impeachment, the cross-examiner became bound by such testimony: see also Krewson v. Sawyer, 266 Pa. 284, 287; Young v. Hipple, 273 Pa. 439, 450. Here, since the evidence in the case failed to show a breach of trust on the part of plaintiff, the manner in which his alleged default in that respect was submitted to the jury,—whether correctly or not,—is immaterial. Hence, it is unnecessary to discuss the instructions complained of under the assignment in hand; for, so far as they are concerned, plaintiff might have properly requested binding instructions. In Miller v. Director General, 270 Pa. 330, 332, reviewing an analogous situation, where plaintiff complained in his assignment that certain instructions were erroneous, we said: "The error complained of is, however, a harmless one, since the court below should have given binding instructions for defendant." See also Jones v. W. Pa. N. Gas. Co., 146 Pa. 204, 211; Schaaf v. Politowski, 276 Pa. 31, 35; Congress C. & T. Co. v. Int. S. S. Co., 282 Pa. 483, 491.

The fourth assignment calls attention to an excerpt from the charge wherein the trial judge said, "We excluded any other evidence of expenses because we did not think it was pertinent." Relying on these words, appellant attempts to argue that the court erred in excluding proofs of this character. The assignment itself, however, shows no rulings excluding evidence, nor exceptions to such rulings. Moreover, a reading of the entire record fails to disclose any such exclusion; on the contrary, the question of expenses appears to have been examined rather thoroughly, considering the collateral part they played in the case. The principal point concerning them seems to have been, whether certain payments made by defendant to plaintiff covered expenses or represented commission on sales.

To continue our consideration of the fourth assignment, in the portion of the charge here complained of, the trial judge said to the jury that, since plaintiff claimed no expenses (which the record shows to be a fact), it was not necessary to go into that subject; then immediately added: "There was $197.10 for expenses, covering a two-months' period......you may consider that in answer to the argument of plaintiff's counsel [who asked you], is it reasonable to believe a man would sell $250,000 worth of goods and have an expense account of [only] $197.10? When you consider that argument, remember that [the expense] account was only covering a couple of months." Appellant claims that this was an unfair presentation to the jury of the matter involved, "in view of the fact that defendant was not permitted to show the actual expenses [it] had [been put to] during the fourteen months of [plaintiff's] employment." We see no merit in this contention, for, as previously said, defendant was not prevented from developing the expense items in question so far as they were relevant to the case. Finally, all of the matter in this assignment was elicited by a request from counsel for appellant, made to the trial judge after he had finished charging

the jury. Counsel said: "I would like to have the court call the attention of the jury to the claim of $197.10, that amount was only for expenses from July 5 to September 25"; and, after the court had made the reply now complained of, counsel did not object to it, or take any special exception, but immediately proceeded to call attention to other alleged deficiencies in the trial judge's instructions.

The fifth assignment complains of the refusal to grant a new trial. This specification of error is not argued in appellant's brief and needs no special discussion.

Under the sixth and last assignment, appellant contends the charge of the court was inadequate, particularly in that the trial judge failed to throw any light on the rules of law governing the subject of the weight of the evidence; but an examination of the charge shows that it contains general and correct instructions on this point, and that, at the end of the charge, the trial judge said to counsel: "Is there anything on either side you wish to call my attention to?" While counsel for appellant, in reply to the judge's inquiry, made several suggestions, he did not ask for fuller or more explicit instructions on the law as to the weight of the evidence; therefore he now has no just ground of complaint.

All assignments of error are overruled and the judgment is affirmed.