## Lawrence et al., Appellants, *v.* Godfrey.

Argued March 21, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*W. T. Tredway*, for appellants.—A trust may be established by parol testimony: Simonds's Est., 201 Pa. 413; Moerlein Brewing Co. v. Rusch, 272 Pa. 181; Washington's Est., 220 Pa. 204; Donithen v. Order of Foresters, 209 Pa. 170; P. R. R. v. Wolfe, 203 Pa. 269; King v. Mut. Benefit Assn., 216 Pa. 553; Shumega v. Slovak Union, 61 Pa. Superior Ct. 126.

Mrs. Lawrence was fully competent to testify, notwithstanding the death of Henry Lineaweaver: Broadrick v. Broadrick, 25 Pa. Superior Ct. 225.

An antenuptial agreement is not invalid by reason of the existence of a prior marriage of the husband, where the woman was ignorant of such marriage and the existence of a living wife: Haller v. Haller, 45 Pa. Superior Ct. 409; Keating v. Rockhill, 78 Pa. Superior Ct. 139.

*Carl E. Glock*, with him *Reed, Smith, Shaw & McClay*, for appellee.—Practically the whole defense of Alice M. Godfrey was brought out in plaintiff's case in the cross-examination, and that part of it which relates to the change of beneficiary, the reason for it, and the explanation of it remains uncontradicted; plaintiffs are bound

by this testimony: Dunmore v. Padden, 262 Pa. 436, 439; Mathey v. Flory Milling Co., 283 Pa. 331, 336.

The uncorroborated testimony of plaintiff, Margaret Lawrence, is too vague and uncertain to prove a secret parol trust: Fague's Est., 19 Pa. Superior Ct. 638; Braun v. Lutheran Church, 198 Pa. 152.

OPINION BY MR. JUSTICE SADLER, April 15, 1929:

Henry E. Lineaweaver, an attorney of the City of Pittsburgh, died on September 7, 1923. He had for many years been separated from his wife, who was at one time an inmate of the Dixmont Hospital. As a practitioner, he had been associated with the law firm of Stone & Potter, but in 1911 severed his connection with it to become sole counsel for the National Fireproofing Company. For a long time he had employed Mrs. Godfrey, defendant in the present proceeding, as his confidential secretary, by whom many of his private affairs were handled, and refused to enter into business for himself unless she would also terminate her business relations with the firm by which she had been employed, and assume charge of his new office. At that time, as found by the chancellor, to secure her assent to the new arrangement, he agreed to assign for her benefit two outstanding life insurance policies on his life of $5,000 each, which were originally made payable to Mrs. Lineaweaver, from whom he had been estranged. As a result of this understanding, defendant resigned her former position, and took charge of Lineaweaver's new office, where she remained in charge until after his death.

Originally, the decedent had taken out a policy in favor of his wife, which he later permitted to lapse. Upon proof of a violated promise to maintain it in force for her benefit, she presented a claim in the orphans' court against his estate, based on the contract to keep it in effect, with the result that an award was made to her for the amount claimed. A second policy was kept up for the benefit of his dependent mother, Prudence

Lineaweaver, and the amount of $15,000, less certain loans, was paid to her after his death. The other two policies for $5,000 each, now in question, originally named his wife as beneficiary, but both were assigned in 1911, as a result of the agreement before mentioned, to defendant. The arrangements for the transfer were carried out by Lineaweaver with the general agent of the insurance company, Mr. Wood, without solicitation or interference by the newly named beneficiary, and the necessary papers were properly executed and filed with the company. It appears by the original cards produced from the files of the insurer that the payee named in case of death was "Alice M. Godfrey." At the suggestion of the managing clerk in Mr. Wood's office, according to the undisputed testimony of Miss Jones, who was in charge, and without any request of insured, there was added to the name the word "trustee."

This designation was the result of the thought of the officials having the policies in charge, that otherwise a question as to the insurable interest of Mrs. Godfrey, who was not a relative of Lineaweaver, might arise, when the proceeds became payable. Neither of the parties interested was consulted as to this change, and at no time was it suggested that the amount called for by the policies be devoted to other than defendant's use. The addition of the word "trustee" to the name of the beneficiary does not presumptively create a trust, and certainly does not indicate such a relation in favor of the unnamed plaintiff rather than some one else. To create a trust, it is not necessary that such descriptive terms be employed: Sheets's Est., 52 Pa. 257; 39 Cyc. 35. Even if added, a trust is not necessarily created: 39 Cyc. 58; Bispham's Principles of Equity, 6th ed., page 104; Pomeroy's Equity Jurisprudence, 4th ed., volume 3, page 2238. Upon the death of the insured, the insurance, less certain loans, was paid by the company to Mrs. Godfrey, and her receipt for the payments accepted by it.

Lineaweaver met Margaret Lawrence, the present plaintiff, in 1907, and an illicit relationship ensued. During the year named, a son was born, who continued to reside with his mother in New York. From that time until his death, the putative father furnished support monthly, though under no formal agreement to so provide. He was at the time married and undivorced, and this situation continued until his death in 1923. Some time prior thereto, defendant learned of the true situation, and when her employer died she sent a newspaper announcement of this fact to the plaintiff. Shortly thereafter the latter came to Pittsburgh and called upon Mrs. Godfrey to see whether any provision had been made for her. She was told none had been, but, knowing the real facts, out of sympathy, as defendant says, she then gave Mrs. Lawrence $1,000, and later sent to the son a check for $25. The personal effects of Lineaweaver were subsequently taken to the home of the mother and sister of decedent in Washington, and a part thereof forwarded by them to the boy in New York, but, because of their own financial needs, they declined to make further contribution.

It will be noticed, the fact that defendant gave Mrs. Lawrence the sum of $1,000, and the reason for so doing, were elicited while the former was a witness for plaintiff, called on cross-examination, and by this testimony the latter is bound, in the absence of satisfactory contradictory evidence, as she is by defendant's denial that she held any insurance as trustee for the plaintiff, or for the latter's son. The testimony of Samuel McClay, Esq., likewise called on cross-examination, is equally conclusive on her. Statements made by both are controlling on the one who produced them, when the evidence given stands without proof fairly overcoming it; and both categorically denied the making of any admission that the policies assigned were in trust for the present claimants. Ordinarily, a party is limited by the answers of the witness whom he calls on cross-examination, though

he is at liberty to prove the facts to be otherwise than narrated. The effect of testimony so adduced on the one offering it is the subject of discussion in Dunmore v. Padden, 262 Pa. 436; Mathey v. Florey Milling Co., 283 Pa. 331; Morningstar v. N. E. Pa. R. R. Co., 290 Pa. 14, and Burke v. Kennedy, 286 Pa. 344), to which cases it is necessary only to refer.

Mrs. Lawrence, on behalf of herself and son, filed this bill in 1928, claiming that the policies assigned to Mrs. Godfrey were in reality in trust for their benefit, and asked that she account for the net proceeds. It is true that relationship, such as insisted on, may be shown by parol, as here unsuccessfully attempted: Christian Moerlein Brewing Co. v. Rusch, 272 Pa. 181; Washington's Est., 220 Pa. 204; Leahey v. O'Connor, 281 Pa. 488. Many cases are to be found where the evidence established that the beneficiary named in an insurance policy, or benefit certificate, was in fact held for another (Donithen v. Ind. Order of Foresters, 209 Pa. 170; P. R. R. Co. v. Wolfe, 203 Pa. 269; King v. Supreme Council, 216 Pa. 553), but the intention to create a trust for another must clearly appear: O'Connor v. Flick, 274 Pa. 521. It is necessary in such cases that three elements concur; sufficient words to create the relation, a definite subject, and a certain and ascertained object: Smith's Est., 144 Pa. 428. The burden of proving that the real beneficiary is another than the person named rests on the one who asserts it (Donithen v. Ind. Order of Foresters, supra; Fague's Est., 19 Pa. Superior Ct. 638), and the evidence to establish it must be clear, precise, convincing and satisfactory to the conscience of the chancellor: Walker v. Walker, 254 Pa. 220; Braun v. First German Evangelical Lutheran Church, 198 Pa. 152; Smith's Est., supra. The Pennsylvania cases so holding are collected in notes found in 23 A. L. R. 1512 and 1541, to which reference is made for the decisions of this court upon the question involved.

The testimony offered by plaintiff rested upon her statement that Lineaweaver told her he was carrying two $5,000 policies for herself and boy in the name of Mrs. Godfrey as trustee, though no such claim was made when she first appeared in Pittsburgh. This is attempted to be reinforced by the proof of the gift of the two checks made by Mrs. Godfrey, with an alleged statement that there would be more forthcoming in the future. Also Mrs. Lineaweaver, decedent's widow, testified Mrs. Godfrey stated that she received nothing from the husband's estate, but the witness did not claim there was any admission of the existence of a trust, and it must be noticed in weighing her evidence that she had been separated from her husband for years, and expressed on the stand her hostility to defendant, accusing her as the source of her own troubles. Mrs. Lawrence further testified as to admissions of Mrs. Godfrey and Mr. McClay as to the purpose for which the insurance in question was held, but her statements were flatly contradicted by both on cross-examination, when called as witnesses. Opposed to this testimony of plaintiff was the uncontradicted evidence of the contract to assign the policies to defendant in consideration of her leaving the service of Stone & Potter and taking charge of the work of decedent, which agreement she fully performed, the fact that the policies were regularly assigned to her as beneficiary, and the word "trustee" added by the clerk in the insurance office without the knowledge of the parties, solely to protect against possible dispute as to the insurable interest of the beneficiary. The allegation that the policies were held in trust for Mrs. Lawrence and her son, and that a promise to give her more was made at the time the check, already referred to, was presented, was flatly denied.

The trial judge heard the evidence, and its findings, approved by the court in banc, supported as they were by competent evidence, are binding here: Williams v. Finlaw, Mueller & Co., 292 Pa. 244; Com. v. Snyder,

294 Pa. 555; Myers v. Ohio-Penn Gas & Oil Co., 294 Pa. 212. He found the contract to assign to Mrs. Godfrey the two policies was for a valuable consideration, and that the use of the word "trustee" was satisfactorily explained, and "was intended to designate Alice M. Godfrey as beneficiary for her sole use and benefit." It further found plaintiff made no demand for the proceeds of insurance policies until five years after the death of Lineaweaver, and that she failed to meet the burden legally cast upon her to show by sufficient proof that there was an agreement to hold for the benefit of herself and son. Even if there was a trust for some undisclosed individual, the evidence would, not justify a declaration that it was for the benefit of plaintiff, for, if we take as accurate the testimony of Mrs. Lineaweaver, it is found not to assert that there was a holding of moneys for the benefit of Mrs. Lawrence, but merely that the decedent had left nothing to defendant. There remains only, to establish the trust, the unsupported testimony of plaintiff that about 1914 Lineaweaver had informed her that he had cared for her and the boy by two policies, yet no such claim was made, after his death in 1923, until 1928. The reason for the actual assignment of the policies to defendant, the use of the word "trustee," the marking on the cards of the insurance company that the loss was payable to Mrs. Godfrey individually, and the payment of the proceeds to her upon his death, all negative an understanding such as is now insisted on by plaintiff.

We have examined the voluminous record with care, and feel the findings of fact made below were fully justified. The conclusions of law followed, and the bill was properly dismissed. All of the assignments of error are overruled.

The decree is affirmed at the cost of appellants.