Schade, Appellant, *v.* Detar.

Argued April 22, 1931.

Before T<small>REXLER</small>, P. J., K<small>ELLER</small>, L<small>INN</small>, G<small>AWTHROP</small>, C<small>UNNINGHAM</small>, B<small>ALDRIGE</small> and D<small>REW</small>, JJ.

*Fred B. Trescher,* of *Kunkle, Walthour and Trescher,* and with him *Frank S. Ruff, Jr.,* for appellant.

*R. W. Smith,* of *Smith, Best and Horn,* for appellee.

O<small>PINION</small> <small>BY</small> D<small>REW</small>, J., July 8, 1931:

Mrs. Elmer Schade, the plaintiff and appellant, brought this action in trespass for compensation for damage to her automobile resulting from a collision between her car and one owned and driven by defendant. At the conclusion of plaintiff's case the trial judge, on motion of defendant's counsel, entered a compulsory nonsuit on the ground of plaintiff's contributory negligence. From the subsequent refusal of the court in banc to take off the nonsuit, plaintiff took this appeal.

The facts expressed briefly are as follows: On November 30, 1927, at about 8:30 o'clock in the morning, the plaintiff's husband, Elmer Schade, with two com-

panions, was proceeding along the Irwin-Manor Road, near Shafton, in Westmoreland County, in the plaintiff's automobile. Schade was driving the car. Defendant lived on that road and was accustomed to park his automobile off the side of the road, opposite his house. A very short time before this accident, he crossed the road to get his car, which was then parked 6 or 8 feet off the highway, with the back of the car toward the highway. He started the car and backed out upon the road. When his rear wheels were about at the center of the concrete road, his car either backed into or was struck by plaintiff's automobile, which immediately swerved to its left and ran into an electric light pole. The uncontradicted testimony showed that at the time of the accident there was a clear, unobstructed view for 350 feet from the place defendant's car was parked in the direction from which plaintiff's car came. Defendant, called by plaintiff for cross-examination, testified that immediately before backing out on the concrete road, he looked in the direction from which plaintiff's car came and the road was clear; and that when he reached the center of the road, he looked again and for the first time saw plaintiff's car, which was then at a distance later determined by actual measurement to be 169 feet. The testimony of plaintiff's husband, and his two companions, was that they did not see defendant's car until they were within 20 to 30 feet of it.

From the testimony in the case, the learned court below held that plaintiff's husband was guilty of contributory negligence because he did not see defendant's car until he was within 20 to 30 feet of it; that if he had been looking ahead, as he was bound to do, he would have had the car in plain view for a distance of 350 feet; and that plaintiff was bound by the negligence of her husband. The nonsuit was therefore en-

tered because of the contributory negligence of plaintiff.

The testimony of defendant, when called by plaintiff for cross-examination, weighed heavily against her because it tended to show negligence on the part of the driver of her car, and went far to convince the court below that the case was not for the jury. It is appellant's contention that that testimony was sufficiently contradicted by plaintiff's witnesses to carry the case to the jury.

After a very careful examination of the record, we are satisfied that this is true. Plaintiff's husband testified that he first saw the defendant's car when it was about 20 or 30 feet away, at which time it was "pretty nearly out in front of me—backed right square out in front of me. ...... Just seemed to come out all at once. ...... I come up the road there and he backed out in front of me and I couldn't go to my right." Russel Plank, who was riding in plaintiff's car, testified that defendant's car was 30 feet away when he first saw it and that it "backed out in front of us." He said defendant told him immediately after the accident that it was "all his fault." Edward Weimer, the other passenger in plaintiff's car, testified that "We were coming along the road. I looked around and saw this car. ........ The car was just starting on the highway. ...... I would say probably the rear wheels were starting on the highway." It is evident from this testimony that if defendant backed out upon the highway, when plaintiff's car was approaching and within 30 feet of it, the question of defendant's negligence was for the jury. There is certainly in the testimony sufficient contradiction of the testimony given by defendant on cross-examination.

It is settled by an unbroken line of decisions in this State that where a party calls his opponent for

cross-examination, he is not concluded by his testimony but may offer witnesses to qualify or contradict it; however, if he does not do so, he becomes bound by that testimony: Dunmore v. Padden, 262 Pa. 436; Krewson v. Sawyer, 266 Pa. 284; Stroh v. Holmes, 83 Pa. Superior Ct. 129; Mathey v. Flory Milling Co., 283 Pa. 331; Cherry v. Union Nat'l Bank, 87 Pa. Superior Ct. 114; Lawrence v. Godfrey, 296 Pa. 474. It was expressly declared by the Act of April 15, 1869, P. L. 30, Section 2, that the party calling his opponent to give evidence "shall not be concluded thereby, but may rebut it by counter testimony." This made possible the offer of witnesses to show a contrary state of facts: Brubaker v. Taylor, 76 Pa. 83. The Act of 1887 (May 23, P. L. 158) likewise provides that the one calling the adverse party "shall not be concluded by his testimony." In Dunmore v. Padden, supra, where defendant was called by plaintiff for cross-examination, it is said, "The plaintiff was not concluded by the testimony of the defendant in this case but was at liberty to call witnesses to impeach his testimony and to show, if possible, that his statements were not true." The party calling his opponent is always at liberty to prove the facts to be otherwise than the witness has represented them. The plaintiff here was not concluded by the adverse testimony of the defendant, given on cross-examination, and her witnesses sufficiently contradicted his testimony, and this with their other testimony which tended to show that the collision was caused by defendant's negligence, required that the case be submitted to the jury.

The learned court below entered the compulsory nonsuit on the ground that the driver of plaintiff's car was guilty of negligence, and that his negligence was imputable to her. He may have been guilty of negligence but inasmuch as he was not plaintiff's servant or agent and was not under her control or engaged

on her business, his negligence was not imputable to her. It is true plaintiff owned the car and permitted her husband to use it at will for his convenience and pleasure. At the time of this accident he was driving the car with her knowledge and consent. He was on his way, accompanied by two friends to Centre County, on a hunting trip. There is no intimation in the case that at the time he was on any business for the plaintiff.

In Kunkle v. Thompson, 67 Pa. Superior Ct. 37, the defendant's 19 year old son was driving his father's car at the time of the accident; the jury found for plaintiff because of the negligence of the driver of the car, and we reversed the judgment of the lower court sustaining the verdict, and said: "The action is not brought against the son who operated the car, but seeks to charge the absent owner with the consequences of the negligent operation of his car by another. Under such circumstances there is surely no need to discuss the fundamental principles underlying the long line of decisions—nor even for a citation of the cases—which declare that under such a state of facts the relation of master and servant must be established or the doctrine of respondent superior may not successfully be invoked. This principle has been steadily and continuously asserted by the Supreme Court and this court. ...... The liability, if any, of the defendant cannot rest merely on the ground that he was the father of the person who drove the car. The fact that he was the owner of the car furnished no foundation for his liability in the case." See Markle v. Perot, 273 Pa. 4 and Calmann v. Sperry, 276 Pa. 273.

In Piquet v. Wazelle, 288 Pa. 463, in a similar case, the Supreme Court said: "A review of the authorities in our own State will show that they are in accord with the doctrine declared in the majority of other jurisdictions. If the car, though acquired for the

benefit of the family, is not operated at the time of the accident, on behalf of the owner and in further-ance of his business, or that of the family, even though it was permissively used, no liability follows for it cannot be said that the driver was his servant or agent." (To the same effect see Martin v. Lipschitz, 299 Pa. 211.)

These authorities are in point and conclusive. The plaintiff was not responsible for any negligent act of her husband while driving her car at the time of this accident. His negligence is not imputable to her: Plauschinat v. Snellenburg, 100 Pa. Superior Ct. 417. Since this is true, the learned court below was in error in concluding that she was negligent, and on that ground entering a compulsory nonsuit and later re-fusing to take it off. The assignments of error to the action of the court in this respect must be sus-tained. The question of defendant's alleged negli-gence remains and can only be determined by a jury, for which reason we return the case for a new trial.

Judgment reversed and a new trial ordered.