# SUPREME JUDICIAL COURT

FOR THE

COUNTIES OF BRISTOL, PLYMOUTH, BARNSTABLE
AND DUKES COUNTY, OCTOBER TERM 1845,
AT PLYMOUTH.

————

PRESENT:

Hon. LEMUEL SHAW, CHIEF JUSTICE.
Hon. SAMUEL S. WILDE,
Hon. CHARLES A. DEWEY, } JUSTICES.
Hon. SAMUEL HUBBARD,

———

LEMUEL FULLER *vs.* SQUIRE FRENCH.

After an owner of land flowed by a mill dam has a verdict for annual damages allowed
and recorded, he may maintain an action under the Rev. Sts. *c.* 116, § 24, against the
owner or occupant of the mill, for the sum due and unpaid for the three years next
preceding the commencement of such action, although the mill and dam are de-
stroyed; provided the owner has not abandoned his mill privilege.

A mortgagee of a mill, mill dam and privilege, who has taken and kept possession for
condition broken, is liable to an action, on the Rev. Sts. *c.* 116, § 24, for the unpaid
annual damages for flowing land, which have been awarded by verdict against the
mortgagor.

THIS was an action of assumpsit, founded on the Rev.
Sts. *c.* 116, § 24, and commenced on the 29th of August
1842, to recover of the defendant, as the owner and occu-
pant of a mill dam and privileges in Attleborough, known
by the name of the City Factory, the annual compensation

formerly awarded to the plaintiff, by a jury duly empannelled for that purpose, against Daniel Reed and Ira Newman, then owners and occupants of said mill dam and privileges, for flowing the plaintiff's land.

At the trial in the court of common pleas, before *Williams,* C. J. the plaintiff introduced evidence of his proceedings on a complaint against said Reed and Newman for flowing his land by means of said mill dam, and the acceptance, by the court of common pleas, at June term 1835, of the verdict of a sheriff's jury, estimating and assessing the damages caused to the plaintiff by such flowing at $ per annum.

The plaintiff also introduced evidence tending to show that the defendant was the owner and occupant of said City Factory estate, at and before the commencement of this action; and that three years' damages, so as aforesaid assessed for the plaintiff, were due and unpaid when the action was commenced.

It further appeared in evidence, that in the year 1836, before the plaintiff had any title to or possession of said estate, the main body of the factory, which stood on the dam aforesaid, was consumed by fire, leaving unconsumed an addition, for a steam engine and boiler, about twenty feet long, and twelve feet wide, and two stories high which had been erected adjoining to the main building, but which never had contained any machinery carried by water power. It also appeared that the factory had never been rebuilt, and that the water wheel, floom and dam remained whole after the fire : That, after the said burning, shafts were put down, connected with the water wheel, and leading from the wheel to said addition to the factory, and thence into a shop standing a few rods distant, on said factory estate, and which had been occupied for a store and for mechanical operations ; that certain machinery was then put into said shop, and was used for various purposes, being moved and carried by water power, by means of said water wheel and shafts ; and that previously, no machinery, in the shop, had been carried by water power : That the machinery, so placed in the shop,

continued to be used, by means of the water power aforesaid, until the 8th of January 1841, when all that part of the dam which was built upon and across the natural bed and channel of the stream was carried away by a flood, leaving a free and unobstructed passage for the stream in its natural course and channel, and leaving the said water wheel, floom and other parts of the dam still standing; and that no part of the dam so carried away had since been rebuilt. It did not appear that any thing had since been done, at or near said dam, or on said City Factory estate, by the defendant or others, by which the water in said stream had been obstructed, or the plaintiff's land flowed. But there was no evidence tending to prove that the defendant had ever, by word or deed, abandoned his right to rebuild the dam and factory and to flow the plaintiff's land as was heretofore done, or had in any way lost or relinquished his said mill privileges.

It also appeared, that on the 13th of August 1838, Ingram & Brown, then owners of said mill dam and estate called the City Factory estate, conveyed it to the plaintiff, in fee and in mortgage, as collateral security for the payment of certain promissory notes, the last of which payments was to be in forty two months from said date; that they continued in possession of said mortgaged premises until the 19th of April 1841, when the defendant entered and took possession thereof for condition broken and for foreclosure, and has ever since had actual possession and occupation thereof, by virtue of his said mortgage.

The judge instructed the jury, that upon the foregoing facts, if satisfactorily proved, the plaintiff was entitled to a verdict; and the jury returned a verdict for him accordingly. The defendant thereupon alleged exceptions.

*Coffin,* for the defendant.

*Wilkinson & Daggett,* for the plaintiff.

SHAW, C. J.   The plaintiff, being owner of land flowed by a mill dam, formerly recovered judgment for his annual damages, on his own complaint, against those who were then owners of the mill and dam. This is conclusive evidence of

his right to recover of them or their successors, till the privilege is abandoned. *French* v. *Braintree Manuf. Co.* 23 Pick. 216. The case shows no abandonment. The City Factory was burnt down, but the dam remained and raised the water; and the water power was in fact used, by means of gearing connecting the water wheel with machinery. The dam was afterwards carried away; but this did not extinguish the mill owner's right. He might, within any reasonable time, and at any season of the year, rebuild the dam, by which the plaintiff's land was constantly liable to be flowed. Nothing short of an abandonment will extinguish the mill owner's right to flow; and whilst that right continues, the land owner's corresponding right to damage also continues. Here there has been no express abandonment, and no evidence from which an abandonment can be inferred.

And the court are also of opinion, that the defendant, as mortgagee in possession, is liable to this action, being privy in estate with the former owners, against whom the judgment was recovered. The rule that a mortgagee is, to most purposes, regarded as owner, is founded on principle, and confirmed by analogous cases. He takes the profits. He has the actual and beneficial use of the plaintiff's land. He is seized and possessed; and the mortgagor's interest is reduced to a right to redeem. The annual damages, which are in the nature of a rent-charge, should properly come out of the annual earnings and profits of the estate, which are taken by the mortgagee. Before entry, the mortgage, to many purposes, is regarded as a pledge; the mortgagor holds the estate and takes the profits. But after entry, the mortgagee holds the estate, and enjoys all the benefits, and is subject to all the burdens of an owner. He has the use of the estate, receives the rent, enjoys the right of a freeholder, with the civil and political privileges incident to that relation. On the other hand, he is bound to pay all taxes and to perform all other duties incident to the ownership of the estate. The court are therefore of opinion that this action may be well maintained against him, as mortgagee in possession.

*Exceptions overruled.*