Krell *v.* Jacobson et al., Appellants.

Argued March 27, 1934. Before FRAZER, C. J., SIMPSON, SCHAFFER, MAXEY, DREW and LINN, JJ.

*George Y. Meyer,* of *Meyer & Nunnink,* with him *Samuel G. Wagner,* for appellants.

*J. Thomas Hoffman,* for appellee.

OPINION BY MR. JUSTICE SIMPSON, April 23, 1934:

Defendants appeal from the judgment entered on a verdict for plaintiff, in an action of trespass for negligence. Notwithstanding our recognition of the skill and care which the trial judge displayed during the trial of the case, we are constrained to enter judgment for defendants non obstante veredicto.

Defendants are engaged in the business of slaughtering cattle, calves, sheep and lambs, and of selling the slaughtered animals to others who dispose of the meat at retail. Plaintiff was, and for a number of years had been, one of their customers, visiting their place one or more times each week, and purchasing from them such of the slaughtered animals as he needed in his business. The extent of their duty to him, under such circumstances, is stated by the trial judge, in his charge to the jury, as follows: "I will say to you as a matter of law that where one is in possession of property on their own premises, and are inviting strangers to come upon the premises, they are bound to exercise reasonable care under the circumstances. They are not insurers of safety, they do not guarantee that you will not be hurt if you come there, and they do not insure you against all possible injury or against any injury, but they do undertake to keep the premises in a reasonably safe condition for the people who are invited in there." At the conclusion of the charge, in response to an inquiry by the trial judge, plaintiff's counsel expressed his satisfaction with it. Under these circumstances all we are required to do, on this branch of the case, is to determine whether or not, at the time of the accident, when measured by the standard laid down by the trial judge, plaintiff was injured because defendants' property was not in a reason-

ably safe condition, as respects so much thereof as had relation to the injury? The trial judge thought there was sufficient evidence to leave that question to the jury for their determination. After a most careful study of the evidence, we have reached an opposite conclusion.

Defendants' premises consist of a shipping office which is entered first when coming in from the street, and back of it are two cooler rooms, one known as the chill cooler, into which the bodies of the animals are placed immediately after they are slaughtered and cleaned, and the other, known as the cold storage room, into which the bodies are taken from the chill cooler after they have sufficiently cooled off, and where they remain until they are selected by defendants' customers who enter the cold storage room for that purpose and carry away therefrom the carcasses they purchase.

In the chill cooler is a single metal track, placed near the ceiling and continuing thence around to the cold storage room where it connects, by means of switches, with four continuous parallel lines of similar tracks, also near to its ceiling and running lengthwise with that room. On the top of all these tracks, when in use, are flanged steel wheels, which span the tracks, and connected with and projecting down from one side of the wheels are hangers which extend below the bottom of the tracks, and then turn thereunder. At the extreme lower end of the hangers, at a point which is directly beneath the center of the tracks, thus preserving, as far as possible, the center of gravity, are rods terminating in hooks, upon which the carcasses are hung. These extend down a sufficient distance to enable the carcasses to be readily placed on or lifted therefrom by a man standing on the floor of the room. The grooves of the wheels are necessarily a little wider than the top of the track. If this was not so, the wheels could not readily be run on the track, particularly when there was a heavy load on the hooks. The result is that the wheels do not rest as steadily on the rails when the hooks are not loaded, as

when they are, but this is unavoidable in that kind of equipment, it being the best known for use in this business. There is neither averment nor proof that the equipment thus briefly outlined is not in accordance with the best usages of the business, and was not in good order and condition at the time of the accident. Indeed, the statement of claim does not complain of the equipment, but seeks recovery solely because of alleged negligence in its use.

On the trial of the case, plaintiff called Samuel E. Jacobson, one of the defendants, as upon cross-examination. He testified that, at the time and place of the accident, he and two of defendants' employees were in the cold storage room of the plant, which was then crowded with animal bodies, being moved around in the room in order to obtain sufficient space to bring in other bodies which had to be temporarily placed therein. Desiring to see the witness, plaintiff came into that room. Just as he entered, one of the employees lifted the body of a calf from a rod attached to one of the hangers, for the purpose of hanging it in another part of the room; but, when the accident happened, he had not had time to complete the operation and return to the place where the carcass had hung and remove the wheel from the track. When plaintiff came into the room, his attention was attracted to the carcass of what is termed "a fancy calf," which was suspended from a rod, hanger and wheel immediately adjoining the empty wheel from which the other calf had just been taken. Plaintiff appears to have had some thought that he might want to buy the "fancy calf," but it had been previously sold and was so tagged. Nevertheless plaintiff went over to examine it, and either smacked or pushed it, with the result that the wheel, upon which it was hung, moved along the track and came into contact with the empty wheel above referred to, causing the latter to fall off at that point and strike both plaintiff and the witness; this caused the injury to plaintiff complained of in this suit. Plaintiff attempts to ex-

cuse his conduct by saying that customers who came into the cold storage room to purchase the animals they needed, were in the habit of feeling the carcasses, pressing their flesh and turning them over in order to be sure they were in good condition. This is true, but plaintiff's excuse does not avail him in this case, since the "fancy calf" had already been sold, as plaintiff knew, and hence he had no occasion to examine or even to touch it.

On this phase of the matter the trial judge told the jury that "the defendants in this case were bound to know whether or not their machinery was dangerous, whether or not the allowing of a vacant hook to remain on that track was a dangerous condition to permit, and it is for you to say whether or not, in the light of that knowledge of which they are chargeable, they exercised reasonable care under the circumstances. As I said, if it was not reasonable care to allow that hook to remain on the track for an unreasonable length of time that would be evidence of negligence. If, on the other hand, they were facing the situation of leaving a vacant hook there only during the brief interval while they removed the carcass to another place and then came back to remove the hook, that would be evidence that they were not negligent, and they could not be chargeable with negligence by reason of an empty hook being there on the track, if it was there under such circumstances." When plaintiff went into the cold storage room he knew that work was being done there, that in the doing of it the carcasses would be transferred from place to place, and that in transferring them they would have to be lifted from the hooks upon which they were hanging, and the wheel left standing and unloaded until the carcass was hung elsewhere and the party returned to remove the wheel. While in that room, under such circumstances, plaintiff took the risk of any injury which might occur to him, if not resulting from defendants' negligence, especially when, as here, it resulted from his own acts.

It follows that if the testimony elicited on cross-examination as above set forth is correct, plaintiff is not entitled to recover, and the burden of proof was upon him to show that it was not. We have often decided that if one of the litigants calls his adversary to testify as upon cross-examination, while the testimony thus obtained is not conclusive on the former, but may be rebutted by other proof, yet to the extent that it is not rebutted it is conclusively taken to be true: Dunmore v. Padden, 262 Pa. 436; Krewson v. Sawyer, 266 Pa. 284; Young v. Hipple, 273 Pa. 439; Walkinshaw's Est., 275 Pa. 121; Felski v. Zeidman, 281 Pa. 419; Mathey v. Flory Milling Co., 283 Pa. 331; Morningstar v. N. E. P. R. R., 290 Pa. 14; Lawrence v. Godfrey, 296 Pa. 474.

To meet this difficulty plaintiff contended: (1) That plaintiff's version of the accident, as disclosed in the cross-examination quoted, showed that there was negligence; and (2) That an admission made by one of defendants, about two years after the accident, also disclosed negligence. Neither of these contentions can be sustained.

As to the former, plaintiff's witness said that on the day after the accident plaintiff told him "exactly the same thing that Sam Jacobson [one of defendants] told him when he went up there two years later," "the only difference being that he did not go into as many details." It follows that we need only go into the details said to have been told the witness at the later date, and if that is innocuous, the statement of plaintiff must be also. As to that later interview the witness says that Mr. Jacobson told him that at the time of the accident "there was a fellow [some distance away in the cold storage room] trying to get off some beef that was sold and was ready to go out. While he was in there lifting the beef off he started the roller and it came down through that open switch." This story is, however, even worse for plaintiff than the other, for it pictures the accident as so occur-

ring that defendants had nothing to do with the incident and could not have prevented the accident. The trial judge made no such mistake. From plaintiff's repeated visits to defendants' place of business he must have known, and there is no denial of the fact, that purchasers and their employees came into the storage room to remove the bodies which they had purchased, just as he did himself.

Moreover, the two contentions as to the cause of the accident are irreconcilable. The claim that the hook which was empty, because of the employee's carrying the body he had removed from it to another part of the cold storage room, and which moved from its stopping place because the wheel and hook holding the fancy calf had been pushed against it by plaintiff, is inconsistent with this latter claim of plaintiff that the wheel to which the beef was hung, itself fell, because of the action of the unidentified "fellow," and struck plaintiff without having been run into by any other wheel. No matter which story is accepted as true, however, no blame whatever can be placed upon defendants, especially as there is no evidence that any wheel had ever been pushed off, or fell without being pushed, in this or any other establishment using this kind of equipment, or that the equipment was not in perfect condition.

The judgment of the court below is reversed, and judgment is here entered for defendants non obstante veredicto.