## Dubin v. City of Philadelphia et al.

*Morris B. Levitt,* for plaintiff.

*Joseph Sharfsin,* city solicitor, and *John J. K. Caskie* and *Israel K. Levy,* assistant city solicitors, for defendant.

*Ulysses S. Koons,* for additional defendant.

Bok, P. J., September 16, 1938.—Plaintiff sued the city for damages when she fell on a broken sidewalk. The city has joined Mabel G. Lesher, additional defendant, by scire facias proceedings, alleging that she "owned and controlled the abutting property, and therefore was primarily responsible." She lives in New Jersey, and the writ was served on her by substituted service under the Act of July 2, 1937, P. L. 2747, 12 PS §331. This reads as follows:

"That, from and after the passage of this act, any nonresident of this Commonwealth being the owner, tenant, or user, of real estate located within the Commonwealth of Pennsylvania, and the footways and curbs adjacent thereto, or any such resident of this Commonwealth who shall subsequently become a nonresident, shall, by the ownership, possession, occupancy, control, maintenance, and use, of such real estate, footways, and curbs, make and constitute the Secretary of the Commonwealth of Pennsylvania his, her, its, or their agent for the service of process in any civil action or proceedings instituted in the courts of the Commonwealth of Pennsylvania against such owner, tenant, or user of such real estate, footways, and curbs, arising out of or by reason of any accident or injury occurring within the Commonwealth in which such real estate, footways, and curbs are involved.

"Section 2. Such process shall be served, by the officer to whom the same shall be directed, upon the Secretary

of the Commonwealth of Pennsylvania, by sending by registered mail, postage prepaid, at least fifteen (15) days before the return day of such process, a true and attested copy thereof, and by sending to the defendant, by registered mail, postage prepaid, a like true and attested copy, with an endorsement thereon of the service upon said Secretary of the Commonwealth, addressed to such defendant at his last known address. The registered mail return receipts of the Secretary of the Commonwealth and of such defendant shall be attached to and made a part of the return of service of such process. . . .

"Section 4. The court in which the action is pending may order such continuances as may be necessary to afford the defendant reasonable opportunity to appear and defend the action."

The additional defendant appears de bene esse, saying that she is a mortgagee in possession, and asking us to set aside the service for two reasons: (1) The Act of 1937 is unconstitutional; (2) even if it is constitutional, it does not include mortgagees in possession. I will consider these in order.

I

Mrs. Lesher asserts that she is being denied due process of law because a tort action is in personam and must come to her if she is to answer at all. Certainly the law is that personal service within the jurisdiction must generally be had in personal actions: Pennoyer v. Neff, 95 U. S. 714 (1877); Huntingdon v. Supreme Commandery, etc., 261 Pa. 168 (1918). This is the common law, and statutes which derogate it must be construed strictly: Williams et ux. v. Meredith, 326 Pa. 570 (1937).

There is now a well-settled exception to this rule. In motor vehicle cases, a nonresident defendant can be reached by constructive service, and this procedure is upheld as a proper exercise of police power: Hess v. Pawloski, 274 U. S. 352 (1927); Vaughn v. Love et al., 324 Pa. 276, 281 n. 4 (1936); Wax v. Van Marter, 124 Pa.

Superior Ct. 573 (1937); see Culp, Process in Actions Against Non-Resident Motorists, 32 Mich. L. R. 325 (1932). This constructive service takes the form of serving the writ upon the Secretary of the Commonwealth, whose appointment as defendant's agent follows automatically from defendant's use of the State highways. Provided means are employed to insure actual notice to the nonresident defendant of such service (Wuchter v. Pizzutti, 276 U. S. 13 (1928)), it is upheld as a valid service within the State upon defendant's agent.

The authority for such constructive service in automobile cases appears in the Act of May 14, 1929, P. L. 1721, sec. 1, as amended by the Act of April 24, 1931, P. L. 50, 75 PS §1201.

The Act of 1937, involved in the instant case, provides the same method of service as in the automobile cases just discussed. The precise question before me is whether the legal philosophy which supports the one should also support the other. The case is apparently one of first impression, here or elsewhere.

I think the act must be upheld. This creates another exception to the rule of personal service in personal actions. Modern life is breaking down State barriers, and as it becomes easier to travel, or to do business, or to own property in other States, one must also expect the obligations arising out of such activities to follow more easily. It is just as important that nonresident owners of Philadelphia real estate should keep their property in such shape as not to injure our citizens as it is that nonresident owners of cars should drive about our streets with equal care. It is only a short step beyond this to assert that defendants in both classes of cases should be answerable in this forum. If it be argued that it would be unfair to make Philadelphians chase car owners to distant States in order to sue them, whereas Philadelphians who fall on streets can stay here and sue the city, the answer is that they are interested as taxpayers in prevent-

ing the expense incident upon the city's bringing suit against foreign property owners in foreign forums.

The additional defendant seeks to distinguish this case from the automobile cases by saying that here plaintiff and the city have the owners and tenants of the building to fall back on. The record is devoid of any such facts. Although the city has also brought in other additional defendants who "controlled, possessed and had the right to possession of the property", I cannot tell whether this building is occupied or vacant. A vacant building would force the city abroad to find the owners and recoup a judgment against it.

Owners are primarily liable: Philadelphia v. Reading Co., 295 Pa. 183 (1929); Philadelphia v. Merchant & Evans Co., 296 Pa. 126 (1929); Bruder v. Philadelphia et al., 302 Pa. 378 (1931). The sidewalk is part of the highway which the public has the right to use; McLaughlin v. Kelly, 230 Pa. 251 (1911). Abutting owners owe definite duties to the public using the sidewalk, as to repair (Fisher et ux. v. City of Philadelphia, 112 Pa. Superior Ct. 226 (1934)), to pay for the laying of the pavement (Philadelphia v. Pennsylvania Hospital, 143 Pa. 367 (1891)), and to remove obstructions (Brown v. White, 202 Pa. 297 (1902)). Owners of real estate are subject to reasonable governmental regulation in the interests of the health, safety, morals, and general welfare of the community in which the property is located: White's Appeal, 287 Pa. 259 (1926); Perrin's Appeal, 305 Pa. 42 (1931); Farmers-Kissinger Market House Co., Inc., v. Reading et al., 310 Pa. 493 (1933).

The State may lawfully impose conditions upon non-residents prerequisite to doing business here, such as requiring them to appoint an agent for the service of process: Stoner v. Higginson et al., 316 Pa. 481 (1934); Doherty & Co. v. Goodman, 294 U. S. 623 (1935). I regard the legislation before me as a reasonable procedural requirement of a nonresident who elects to own or hold mortgages upon real estate here. It does not affect such

owner's rights but only regulates the procedure by which he must meet existing obligations. As Mr. Justice Brandeis said in Kane v. State of New Jersey, 242 U. S. 160, 167 (1916) :

"There is nothing to show that the requirement is unduly burdensome in practice. It is not a discrimination against nonresidents, denying them equal protection of the law. On the contrary, it puts nonresident owners upon an equality with resident owners."

I therefore hold the act to be constitutional.

## II.

The additional defendant contends that the act cannot apply to mortgagees in possession.

This point is confusing because her status as mortgagee in possession affects both the question of her liability in the action and the question of the validity of the service. As to her liability, I express no opinion, for that must await the trial. As to the jurisdictional point, the case is properly before me in limine: Snyder et al. v. McCanless, 23 D. & C. 551 (1935).

In Sansotta v. Pittsburgh et al., 330 Pa. 199 (1938), the court held that a mortgagee in possession may or may not be liable, depending on the facts, and that a scire facias which averred liability merely because the additional defendant was a mortgagee in possession was defective.

Here the scire facias avers that Mrs. Leshner "owned and controlled" the property and therefore was primarily responsible. In her petition, she denies that she was an "owner, tenant, or user", fails to deny that she "controlled" the property, and merely avers that she was the mortgagee in possession.

I view her allegation as a conclusion and, therefore, insufficient to avoid the service. It may refer to a factual situation where the possession is actual, as in the case of physical occupancy and management, or it may refer to the legalistic "right to possession" which inures to the

mortgagee at the moment of executing the mortgage: Fluck v. Replogle, 13 Pa. 405 (1850); Bulger v. Wilderman et al., 101 Pa. Superior Ct. 168 (1931).

I think it is fruitless at this stage of the proceedings to consider whether the meanings of the word "user" include "possession" and "right to possession". Between the mortgagor and mortgagee, a mortgage is a conveyance of title to the extent necessary to make it the effective security of a debt, and the mortgagee's right to possession inures at the moment of executing the instrument. Between the mortgagee and outsiders, however, a mortgage is merely the security for a debt, and the mortgagor is the owner, even of the legal title: Bulger v. Wilderman et al., supra, and cases cited. If the instant proceedings were between mortgagor and mortgagee, Mrs. Lesher's tenure, as mortgagee in possession or mortgagee with right to possession, would be a limited but substantial estate in the land. She could assert it by entry, by ejectment, or by notice to the tenants to pay the rent to her. Since the suit is between her, as mortgagee, and the city, as a third party, the incidents of her tenure are very different. So far as the city is concerned her tenure does not exist until she has converted her right to possession into some form of actual possession: her mere right, unexercised, gives the city no hold on her whatever, jurisdictionally or substantively.

A mortgage, therefore, has two faces, like Janus, one for the mortgagor and another for third parties. It follows that whether a mortgagee is "using" the property depends very much on what face one is looking at, and on what the mortgagee is talking about. Despite the activity implied in the word "user" and the passivity implied in the word "possession", it may be that legalistically the two are synonymous: my purchase and consequent possession of land would be a use of it even if I never went near the place. That is not the point. A mortgagee's "right to possession" of the property means nothing to a

third party. Only actual possession has any significance, and that requires the mortgagee's overt act.

For all I know, Mrs. Lesher is talking mortgagor-mortgagee language and referring to her right to possession only. If so, it has no meaning for the city. If she has done an overt act and her possession is actual, she may well be a "user", so far as the city is concerned. The phrase "mortgagee in possession" sheds no light. It is at best a conclusion and therefore insufficient pleading: it is no pleading at all if it be considered as a legal conclusion, and it is ambiguous if it be considered as a conclusion of fact. I believe this to be in line with the decision in Sansotta v. Pittsburgh et al., supra, where the court said:

". . . there would have to be more set forth in the scire facias to make out a prima facie case against the additional defendant other than merely that he was mortgagee in possession. The scire facias was defective on its face, so far as importing liability upon Stoner is concerned and therefore was properly quashed.

"We do not mean to say that there can be no liability on the part of mortgagees in possession of property: *Fuller v. French*, 51 Mass. 359; *Ferman v. Lombard Investment Co.*, 56 Minn. 166, 57 N. W. 309; 41 C. J., Sec. 581. Under circumstances where a mortgagee is in actual control and possession, there may well be, but facts showing this or other necessary requirements must appear in the pleading, otherwise it is demurrable."

It might also be pointed out that the word "tenant" carries a destiny of its own. In 2 Blackstone's Commentaries (Lewis' ed. 1897) 623, sec. 158, the following appears:

"But, so long as it [i. e. the mortgagee's estate] continues conditional, that is, between the time of lending the money and the time allotted for payment, the mortgagee is called *tenant in mortgage*": (Italics supplied), citing 2 Coke upon Littleton, sec. 332.

See also Myers et al. v. White, 1 Rawle 353, 355 (1829), where Justice Rogers said: "The mortgagee is entitled to an estate in the land as *tenant in mortgage, in fee, or for a term of years,* as the case may be." (Italics supplied). This case is cited in Abraham Rosenblatt B. & L. Assn. v. Miller et al., 13 D. & C. 73, 75 (Phila., 1930), where the term "tenant in fee" appears in the syllabus, and in Bulger v. Wilderman et al., supra, at page 172. Compare also the current use of the term "terre-tenant".

In sum, I cannot decide whether a "mortgagee in possession" is a "user" without knowing more about the character of the possession. The case will present a clearer issue on appeal if Mrs. Lesher will amplify her petition in this particular and give me a basis for decision. Leave is hereby given her to do so within 15 days. If she does not care to do so, her rule to set aside the service and quash the writ of scire facias is discharged.

Bok, P. J., December 9, 1938.—Mabel G. Lesher, the additional defendant, has filed a supplemental petition to set aside the service on her. In it she sets forth certain facts to explain what sort of "mortgagee in possession" she is.

These facts show that she has never been physically on the mortgaged premises and has not exercised actual possession of it; that she has been collecting rents for several years because of the mortgagor's default in payment of interest and taxes; that she has applied the rents to the payment of city taxes and water rents; that the property has been occupied continuously since before the accident by tenants under lease from her, and she attaches a copy of that lease; and that the pavement was in good condition when the lease was executed.

It may be that Mrs. Lesher can avoid liability because & Evans Co., 296 Pa. 126 (1929). That is not for my possession is primarily liable: Philadelphia v. Merchant of this lease. Generally, the tenant or occupier in actual consideration now, as I cannot pass upon questions of fact,

in a preliminary proceeding, which are properly for a jury at the trial: Lackawanna County v. James et al., 296 Pa. 225 (1929) ; Koontz v. Messer et al., 314 Pa. 434 (1934) ; Lewis v. Beatty, 306 Pa. 242 (1932).

It seems unfair to bring a nonresident into this forum in face of a state of pleaded facts which, if established in the absence of any countervailing facts that the city may have, would automatically relieve her of liability at the trial. She has pleaded a lease to the same persons whom the city has already brought on the record as additional defendants, saying that they "controlled, possessed, and had the right of possession" of the property. Even from this meagre pleading, it looks as though the city knows about the lease and is doing a useless thing in joining Mrs. Lesher. It would be better if the city did not use its power under the act to annoy nonresidents needlessly, or if the act were so drawn as to prevent its doing so. While the court has nothing to do with these considerations, they are mentioned because this proceeding has all the earmarks of a test case.

The precise question now is whether Mrs. Lesher is a "user" of the property. The city does not pretend that she is either an "owner" or a "tenant". I hold that she is a "user". While her use is not based on *possessio pedis*, it is shown by her collecting rents, by her using them to pay city taxes and water rents, and by her leasing the property to the present tenants. This, in my opinion, is an active exercise of the "right to possession" which inured in her when the mortgage was executed.

It is not every use that will justify the city in proceeding under the act. The use of property by a trespasser, being without right, would not do so; nor would its use as a permissive crossing, since the users would have no interest in the property. The same can be said of certain kinds of easements, such as the right of a telephone company to maintain its poles on the property. And so of guests, invitees, and licensees. None of these "pos-

sesses" the property, with right to do so. "Use" must stem from some form of rightful possession, which contemplates some of the perquisites of ownership or control, even if temporary.

Mrs. Lesher, as mortgagee, does "possess", in this sense, particularly as she has exercised her right after default. She collected rents and leased the property, both acts of dominion under sanction of law.

The duty of a mortgagee in possession is that of a "provident owner", with obligations analogous to those of a trustee: Integrity Trust Co. v. St. Rita B. & L. Assn., 112 Pa. Superior Ct. 343 (1934).

In Tryon et al. v. Munson et al., 77 Pa. 250 (1875), the court, by Mr. Chief Justice Agnew, said (p. 262):

"The mortgage passes to the mortgagee the title and right of possession to hold till payment shall be made. He may, therefore, enter at pleasure, and take actual possession—use the land and reap its profits. Now this title or lawful right to possess, and actual pedis possessio, are not ideal or contemplative merely, but are real and tangible. True, the right is conditional, and will cease on payment of the debt; but until the condition is performed, the title and possession are as substantial and real as though they were absolute. The evidence of this is that the mortgagee may dispossess and hold out the mortgagor until he performs the condition, or until the perception of the profits reaches the same result. Thus we perceive an interest or estate in the land itself, capable of enjoyment, and enabling the mortgagor to grasp and hold it actually, and not a mere lien or potentiality, to follow it by legal process and condemn it for payment. The land passes to the mortgagee by the act of the party himself, and needs no legal remedy to enforce the right."

In Bulger v. Wilderman et al., 101 Pa. Superior Ct. 168 (1931), the court said, at page 176:

". . . the weight of authority seems to be that the equivalent of entry may be obtained by the mortgagee making demand on the tenants for the rent".

This is what Mrs. Lesher says she did. Her collecting the rent is, therefore, the same as though she took actual physical possession.

That such possession is a use seems clear. In Philadelphia v. Merchant & Evans Co., supra, the court said: "In general 'use' has been defined as 'the right to enjoy, hold or occupy and have the fruits thereof.' If the thing used is in the form of real estate, the 'use' includes the occupancy or cultivation, or the rent which can be obtained therefrom". See also Commonwealth v. Stofchek, 322 Pa. 513 (1936).

The rule is discharged.