Zisman, Exr. *v.* Duquesne City et al. (Duquesne Trust Co., Appellant.)

Argued November 11, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*W. M. Ewing,* for appellant.

*Charles A. Lewis,* with him *Louis Finkelstein* and *Edward O. Spotts, Jr.,* for appellee.

OPINION BY BALDRIGE, J., January 30, 1941:

Fannie Essner sustained certain injuries on February 13, 1936, as a result of a fall on the sidewalk in front of premises No. 60 Milford Street, in the city of Duquesne. She instituted an action of trespass against the city and it brought in as additional defendants, Fannie Frank, the alleged owner of the premises, and the Duquesne Trust Company (now the Duquesne City Bank) mortgagee, allegedly in possession and control of the premises at the time of the accident. The plaintiff died before trial and Albert Zisman, executor, was substituted as party plaintiff.

The trial resulted in a verdict of $1500 in favor of the plaintiff against the city and in a like amount in favor of the city against the trust company as mortgagee in possession and a verdict in favor of Fannie Frank. After refusal of defendants' motions for judgment n. o. v. and the entry of judgment on the verdict, this appeal was taken by the Duquesne Trust Company.

The parties stipulated that the sole question to be decided by this court is: "Was there sufficient evidence produced at the time of the trial to show that The Duquesne Trust Company (now Duquesne City Bank) assumed or had actual control and possession of the property so as to make it liable?"

There do not seem to be many cases dealing primarily with tort liability of a mortgagee in possession for injuries occasioned third parties as a result of the condition of the mortgaged premises. The decision in *Sansotta v. Pittsburgh et al.,* 330 Pa. 199, 199 A. 164, in which an added defendant was the mortgagee alleged to have been in possession of property having a defec-

tive sidewalk upon which plaintiff sustained injuries, turned on an insufficient pleading, which contained the naked averment that the additional defendant was "a mortgagee in possession." Justice SCHAFFER (now Chief Justice) stated (p. 201): "Merely to say that a mortgagee is in possession of property is not enough to fix him with responsibility for its condition and to impose upon him a duty to repair ...... It was stated at bar by the assistant city solicitor, who presented the appellant's case, and in a supplemental brief filed, that Stoner was in possession in the sense that he as mortgagee was collecting the rents. This would not make him liable over to the city. ...... We do not mean to say that there can be no liability on the part of mortgagees in possession of property: *Fuller v. French*, 51 Mass. 359; *Ferman v. Lombard Investment Co.*, 56 Minn. 166, 57 N. W. 309; 41 C. J., Sec. 581. Under circumstances where a mortgagee is in *actual control and possession*, there may well be, ......" (Italics supplied).

In the present case the defendant city's amended writ of scire facias averred that the trust company was mortgagee in possession and that it collected rents, "made all necessary repairs, paid taxes and fire insurance premiums and in every way exercised ownership, actual control and complete supervision of property, in front of which property, this accident is alleged to have occurred."

"The term 'mortgagee in possession' is applied to one who has lawfully acquired actual possession of the premises mortgaged to him, standing upon his rights as mortgagee and not claiming under another title, for the purpose of enforcing his security upon such property or making its income help to pay his debt; but the mere fact that the mortgagee receives the rents and profits does not constitute him a mortgagee in possession, unless he takes the rent in such a way as to take

out of the hands of the mortgagor the management and control of the estate:" 41 Corpus Juris, p. 612, §580. See, also, 10 R. C. L., §106, p. 331.

In both *Fuller v. French* and *Ferman v. Lombard Investment Co.,* cited in the Sansotta case, supra, a mortgagee, who unquestionably was in actual possession and control, was held liable to third parties for injuries due to the condition of the mortgaged premises. In *Mortimer. v. East Side Savings Bank,* 251 App. Div. 97, 295 N. Y. Supp. 695, the defendant bank had taken possession of a hotel as mortgagee and leased it to a tenant. Holding the bank might be liable as a mortgagee in possession for a defective condition of the premises existing at the time of the lease, whereby plaintiff, a patron of the hotel, was injured, EDGCOMB, J. stated (p. 699) : "In general, he [the mortgagee in possession] is bound to employ the same care and supervision over the mortgaged premises that a reasonably prudent owner would exercise in relation to his own property; he is bound to make reasonable and needed repairs, and is responsible for any loss or damage occasioned by his wilful default or gross neglect in this regard (citing cases)."

In *Bank of America v. Bank of Amador Co.,* (Cal.) 28 P. 2d 86, 89; *Mulcahy v. Weber,* 162 N. Y. S. 985; *Lyon v. Queensboro Corp.,* 248 N. Y. S. 353; and *Sabiston's Adr. v. Otis Elev. Co.,* (Ky.) 64 S. W. 2d 588, 591, it was also held that the necessary possession of a mortgagee, as regards tort liability to third persons, is determined neither by occupation, nor receipt of the rents, but by the exercise of dominion and control of the mortgaged property. The statement in *Sansotta v. Pittsburgh et al.,* supra, that the mere receipt of rentals is not sufficient, but "actual control and possession" are necessary to make a mortgagee liable to third persons in tort for failure to properly maintain the mortgaged premises, is therefore in apparent agreement with the law on this subject in other jurisdictions.

The evidence in the instant case regarding the trust company's control and possession of the property here involved may be summarized as follows: The trust company became the holder of a mortgage by assignment thereof on May 29, 1919. In February of 1935, the mortgage was in default, both as to principal and interest, and taxes were delinquent.

There is no dispute about the fact that beginning with February of 1935, Henry Escovitz, a teller in the defendant trust company until February 13, 1936, when he became assistant treasurer, collected all rents from the premises. The city called Escovitz as on cross-examination and attempted to establish that in collecting rentals and managing the property, after the owner Mrs. Frank ceased to manage it, he acted as agent for the trust company. Escovitz, who, according to his testimony, conducted a rental collection agency on the side as part of his personal business not connected with the trust company, denied acting for the company and stated he acted solely for and under the authority of Mrs. Frank, the owner.

Mrs. Frank, called by the city, expressly denied that Escovitz acted as her agent in the collection of rentals or that she had anything to do with the property after the early part of the year 1935, when she let the trust company take charge of it.

Escovitz testified that during the period from February 1935 to February 1936 he visited the premises about twice a month. The property was then occupied by seven tenants who paid rentals to him, both by check and in cash. Three checks made by a tenant, the American Legion, to the order of the Duquesne Trust Company, and cashed without Escovitz's endorsement, were introduced in evidence. He stated these rentals, like all others received from the property, were in fact credited to an account which was carried on the records as "Frank property, Henry Escovitz, Agent." He paid

out of this account by checks signed "Frank Property, Henry Escovitz", the water rent, repairs ordered by him, which included plumbing and plastering and all necessary expenses, except taxes.

Escovitz paid also by check dated April 16, 1936, a local justice of the peace for the service of notice in a proceeding to evict one of the tenants of this property. Prior to the date of the accident he made arrangements and permitted the Legion Post to occupy part of the premises as tenant. Rents were often paid to him at his window as teller in the trust company during regular banking hours; in his absence the trust company accepted rental payments for him.

Escovitz, after deducting repairs and other expenses and his five per cent commission, paid the balance, by check, to the trust company on account of the back interest due on the mortgage. Checks covering commissions were cashed by him without endorsement. Overdrafts on this account were permitted temporarily on trust company funds, which Escovitz made good at the close of business. In at least one instance he wrote to a tenant of the Frank Property on trust company stationery and signed himself "Assistant Treasurer." Neither Escovitz nor the record owner, Mrs. Frank, paid any taxes on the property during the period in dispute.

Mrs. Frank, called as on cross-examination by the city, testified she "just couldn't keep up the building, and they [the trust company] pressed me for money for the interest and so on, and they collected rent, and they kept it." She stated that she never authorized Escovitz to collect rents, make repairs, secure or eject tenants, and that "they never asked me anything and I didn't know what was going on." She knew Escovitz was collecting the rents but stated he did so for the bank, not for her.

Admittedly, the city, in order to fasten liability on the trust company, had the burden of proving that it

was in actual control and possession as mortgagee. It would be necessary for it to prove that the trust company exercised those acts of dominion over the property, which any owner of a similar property would do under the circumstances. These would include inspection of the premises, either personally or through an agent, making of repairs, arranging leases, collection of rents, eviction of tenants, payment of all expenses of maintenance, etc.

Indubitably, Escovitz as agent exercised such control over the property as would place his principal in possession thereof, as he did everything an owner in possession and control of similar premises could do, except pay taxes. His principal was, therefore, responsible for the condition of the sidewalk at the time of the accident. We are confronted now with the question: Is there sufficient evidence to show Escovitz acted as the trust company's agent, rather than as agent for Mrs. Frank? That question must be answered in the affirmative.

Appellant contends that having called Escovitz for cross-examination, the city is bound by his testimony, which was not sufficiently denied: *Readshaw et ux. v. Montgomery,* 313 Pa. 206, 209, 169 A. 135; *Krell v. Jacobson,* 314 Pa. 522, 527, 172 A. 697. Mrs. Frank's testimony was a direct denial of Escovitz's statement that he acted as agent for her. His actions were as consistent with an agency for the trust company as for Mrs. Frank. The statements of a party called for cross-examination may be contradicted by circumstances as well as by direct testimony: *Marach v. Kooistra et al.,* 329 Pa. 324, 198 A. 66; *Alfandre et ux. v. Bream,* 135 Pa. Superior Ct. 538, 542, 7 A. 2d 502; *Fetterolf v. Yellow Cab Company et al.,* 139 Pa. Superior Ct. 463, 472, 11 A. 2d 516.

Two of the tenants' testimony tended to corroborate the city's position that Escovitz acted as agent for the

trust company, to which their rent checks were made payable. The trust company did not explain the situation by calling other witnesses, but was content to rest on the explanations and denials of Escovitz alone, that he acted as its agent. The question for whom of two persons a party is agent is generally for the jury, especially where the testimony is unsatisfactory or contradicted: *Conshohocken Tube Company v. Iron Car Equipment Company et al.*, 181 Pa. 122, 37 A. 190. We think it is quite clear, considering all of the testimony and the attending circumstances, that the evidence created more than a doubtful balance which required the submission of the case to the jury on the question as to whom Escovitz represented in managing the property, and as a matter of law, under the authorities cited, that the jury was warranted in finding Escovitz exercised such acts of dominion and control over the premises in question as would make the trust company, as his principal, the mortgagee in actual possession and control of the premises, and liable over to the city for failure to maintain the sidewalk in proper condition.

The judgment is affirmed.