In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 19-2525

APEX MORTGAGE CORPORATION,

*Plaintiff-Appellant,*

*v.*

GREAT NORTHERN INSURANCE COMPANY, *et al.,*

*Defendants-Appellees.*

———————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:17-cv-03376 — **Virginia M. Kendall**, *Judge.*

———————

ARGUED FEBRUARY 20, 2020 — DECIDED AUGUST 24, 2020

———————

Before BAUER, EASTERBROOK, and MANION, *Circuit Judges.*

MANION, *Circuit Judge.* Federal Insurance Company refused to cover Apex Mortgage for the settlement of state tort claims filed against Apex. Apex sued but the district court granted summary judgment for Federal. Because the record contains an open question of material fact, summary judgment should not have issued and remand is necessary.

## I. Background

Chuck and Richard Dai owned a Chicago laundromat. In 2000, they obtained a commercial loan from Apex secured by a mortgage on the property. The Dais defaulted on the mortgage in 2007, though they avoided foreclosure through a payment agreement. But the laundromat ceased operations that same year and the Dais defaulted again in 2008. The Dais then offered the deed to Apex in lieu of foreclosure. Apex accepted on the condition that the property was still marketable. An inspection in December 2008 revealed it was not: the property was in disrepair, exposed to the elements, trashed, and open to vagrants. Apex took measures to preserve the property and sent the deed back to the Dais in April 2009.

On December 22, 2010, two Chicago firefighters lost their lives battling a blaze at the abandoned laundromat. The firefighters' estates sued Apex in Illinois state court for negligence under a premises liability theory. Apex and the estates settled the matter. Apex turned to its umbrella insurance provider, Federal, for coverage, but Federal refused.[1] According to Federal, the insurance policy's Foreclosure Exclusion barred coverage because Apex controlled the property as a "mortgagee in possession" at the time of the fire. The exclusion states: "This insurance does not apply to any liability or loss, cost or expense arising out of property you acquire by

---

[1] Apex settled the Illinois action for $15 million. Apex's general liability policy with Great Northern Insurance Company covered $1 million of the settlement. After tendering that amount, Great Northern was dismissed from this lawsuit in 2018. Apex sought coverage under its excess and umbrella policy with Federal for the remaining $14 million.

foreclosure, repossession, deed in lieu of foreclosure or as mortgagee in possession." Joint App'x at 48.

Apex sued in federal district court. The parties stipulated that Pennsylvania law governs the coverage dispute. The district court granted summary judgment for Federal, holding the undisputed record demonstrated Apex was a mortgagee in possession when the fire broke out. Apex appeals.

## II. Discussion

Apex argues the steps it took to preserve the property fall short of rendering it a "mortgagee in possession." It pushes a narrower definition of the term than that reached by the district court. We do not read the caselaw in Apex's favor. Nevertheless, we must remand because a triable issue exists on who possessed the property at the time of the fire.

### A. "Mortgagee in possession"

Apex contends the district court misinterpreted Pennsylvania law en route to defining "mortgagee in possession." The district court held to qualify as a mortgagee in possession, a mortgagee need only obtain possession of the property from the mortgagor upon default with the mortgagor's consent. Apex would add one more element: a mortgagee qualifies as a mortgagee in possession if and only if it takes possession of and operates the property to recoup the defaulted loan. Mere possession is not enough, or so the argument goes. Nor is taking control of the property simply to secure it against devaluation caused by vandals, the elements, etc. Because Apex did just that and nothing more, it believes the mortgagee in possession label does not fit and the policy exclusion does not apply.

To support its position, Apex relies primarily on the fol-
lowing excerpt from *Zisman v. City of Duquesne*:

> The term "mortgagee in possession" is applied
> to one who has lawfully acquired actual posses-
> sion of the premises mortgaged to him … for the
> purpose of enforcing his security upon such
> property or making its income help to pay his
> debt; **but the mere fact that the mortgagee re-
> ceives the rents and profits does not constitute
> him a mortgagee in possession, unless he
> takes the rent in such a way as to take out of
> the hands of the mortgagor the management
> and control of the estate**.

18 A.2d 95, 97 (Pa. Super. Ct. 1941) (emphasis added). Apex
reads the highlighted language to mean that a mortgagee
does not transform into a mortgagee in possession unless it
takes over the management and control of the property to
collect rents. But we do not accept Apex's expanded definition
or its interpretation of *Zisman*. The cited language does not
instruct that "mortgagee in possession" applies *only* if the
mortgagee both acquires the property and operates it for the
purpose of putting the income toward the defaulted loan.
Rather, only *if* a mortgagee takes possession for such purpose
do management and control come into play; the mortgagee's
operation of the property is not necessary otherwise. *Zisman*
does not exclude from the definition a mortgagee that simply
exercises its right to take possession of the property upon
default.[2]

---

[2] Apex also points to *Woodlands Community Association v. Mitchell*,
where the court held a mortgagee who takes possession of real estate upon

Our study of Pennsylvania caselaw supports this conclusion. Actual possession—not operation and management—is king when defining mortgagee in possession: "'Mortgagee in possession' is a term applied to the special status of a mortgagee who has obtained possession of property from the mortgagor with the consent of the latter." *Myers-Macomber Eng'rs v. M. L. W. Constr. Corp.*, 414 A.2d 357, 359 (Pa. Super. Ct. 1979).[3] And the right of possession flows only from the borrower's default. In *Erny v. Sauer*, Pennsylvania's high court noted the mortgagee, upon default, "could have entered [the property]" at his pleasure, "take[n] actual possession," and "used the land and reaped its profits." 83 A. 205, 206 (Pa. 1912); *see also Peoples-Pittsburgh Tr. Co. v. Henshaw*, 15 A.2d 711, 714 (Pa. Super. Ct. 1940) ("[O]n default in the terms of the mortgage, the mortgagee is entitled to possession of the premises if he can enter peaceably … ."). *Erny* does not say a mortgagee in possession *is only* one who then directs those profits toward the default.

The mortgagee's right of actual possession lasts until the default is recovered. *How* the default is resolved does not

default does not become a mortgagee in possession by merely acting to protect its security interest, e.g., changing the locks and winterizing the property. 162 A.3d 306, 309 (N.J. Super. Ct. App. Div. 2017). But *Woodlands* is of limited utility because, as far as we can tell, Pennsylvania courts have not adopted its reasoning. We are resolving a matter of Pennsylvania law here, not of New Jersey law. Indeed, New Jersey examines whether a mortgagee is in possession on a case-by-case basis that measures the mortgagee's actions against the circumstances. *Id.* (citing *Scott v. Hoboken Bank for Sav.*, 19 A.2d 327 (N.J. Super. Ct. 1941)). That standard does not appear in any of the Pennsylvania cases we reviewed.

[3] The parties do not appear to contest consent. It is provided in the mortgage agreement.

drive possession. For example, *Tryon v. Munson*, relied on by *Erny*, held the title and right of possession passes to the mortgagee upon default "till payment shall be made." 77 Pa. 250, 262 (1875). The *Tryon* court explained the mortgagee may elect to "dispossess and *hold out the mortgagor*" until the *mortgagor* satisfies the default. *Id.* (emphasis added). The property is the mortgagee's to enjoy however it sees fit until the default is cured, whether the cure comes from the mortgagee's operation of the property or elsewhere. *See id.* ("[W]e perceive an interest or estate in the land itself, capable of enjoyment, and enabling the mortgagor to grasp and hold it actually … ."). Thus a mortgagee who exercises its right of actual possession upon default and moves to safeguard its security interest in the property still fits the definition of "mortgagee in possession."

Many cases discuss the duties of a mortgagee in possession, which echo Apex's proffered definition. *See, e.g.*, *Myers-Macomber*, 414 A.2d at 360 ("The mortgagee in possession has a duty to collect the rents and profits which accrue during his occupancy and apply them to the mortgage debt."); *Landau v. W. Pa. Nat'l Bank*, 282 A.2d 335, 339 (Pa. 1971) ("A mortgagee in possession must account for rents and profits, must maintain the mortgaged premises in good condition to prevent its deterioration, and is liable for waste.") (internal citations omitted). But duties are not definitional elements—they tell us only what a mortgagee, once in possession, must do. They do not tell us what a mortgagee in possession *is*.

Timing is everything. If Apex was not a mortgagee in possession at the time of the fire, then the policy's exclusion does not bar coverage. Perhaps an easier way to think of the issue is not "what is a mortgagee in possession?" but "*when* does a

mortgagee become a mortgagee in possession?" The answer: a mortgagee becomes a mortgagee in possession when, upon default, it takes actual possession of the property with consent of the mortgagor.[4] Until the default is cured, whatever the mortgagee does post-possession—secure the property, rent it out, or do nothing at all—has no bearing on its status as a mortgagee in possession.

## B. Actual possession—a material dispute lingers

The next question is a factual one: did Apex have actual possession of the property on December 22, 2010? If not, then Federal cannot invoke the policy's exclusion for "mortgagees in possession." The district court determined Apex indisputably possessed the property, but we think the court jumped the gun.

We review summary judgment *de novo*, asking whether a genuine dispute exists over any material fact. *Kopplin v. Wis. Cent. Ltd.*, 914 F.3d 1099, 1102 (7th Cir. 2019).

*Zisman* equates "possession" with exerting "dominion and control" over real property. 18 A.2d at 97–99. And Pennsylvania courts (albeit in tort context) define a "possessor" of real property as one "who is in occupation of the land with the intent to control it." *Stanton v. Lackawanna Energy, Ltd.*, 886 A.2d 667, 677 (Pa. 2005) (citing Restatement (Second) of Torts

---

[4] Interpreting Pennsylvania caselaw, federal bankruptcy courts have reached this same conclusion. *See, e.g.*, *In re Olick*, 221 B.R. 146, 156 (Bankr. E.D. Pa. 1998) ("To explain, a creditor *becomes* a mortgagee-in-possession when it takes actual possession and control over a debtor's property.") (emphasis added); *In re Rodriguez*, 218 B.R. 764, 781 (Bankr. E.D. Pa. 1998) ("A mortgagee is entitled to possession of the subject real estate upon a default in performance by the mortgagor.").

§ 328E). "Control" means physical control; a person exercising his possessory interest in land exerts physical control over it with the intent to exclude others from occupying the property. Restatement (First) of Property § 7. Under Pennsylvania law, whether a party is a "possessor" of land is treated as a question for the trier of fact. *Blackman v. Fed. Realty Inv. Tr.*, 664 A.2d 139, 142 (Pa. Super. Ct. 1995).

The district court held Apex must have been in possession of the laundromat in December 2010 because it inspected and cleaned the property, installed a tarp over the deteriorated roof, boarded up the windows, and changed the locks.[5] According to the district court, these facts were dispositive of physical control. The changed locks in particular signified an intent to exclude all others.

But other details deserve consideration, too. First, Apex instructed its realtor to post a notice at the property informing the Dais how to obtain keys for the new locks. The record is silent on whether the realtor followed through. But the Dais did not testify that the notice wasn't posted or made available, only that they never were "provided with" and never "saw" the information. In fact, Chuck Dai acknowledged Apex never prevented or told him he could not access the property. Next, after inspecting the property, Apex returned the deed to the Dais in April 2009 along with a letter. The letter reminded the Dais of their ownership and mortgage obligation, and it urged them to inspect and secure the property. The Dais claim they never received this letter or the deed. Granted, ownership is

---

[5] Inspection of the property revealed it was open to vagrants. Apex's changing of the locks might be described more accurately as placing new locks where the original ones had been bypassed or broken.

not the same as possession. But even still, in July 2009, Chuck Dai ordered a handyman to board up the property after being cited for building code violations. Chuck met with a city inspector at the property to discuss these measures. Chuck testified the property was open prior to hiring the handyman. In October 2009, Chuck entered into a settlement with Chicago to cure the code infractions by November 2010. He failed to do so and served 180 days in jail as a result. At no point in dealing with the city did Chuck contest control of the property. Meanwhile, Apex had no contact with the property after April 2009. Together, these facts create a triable issue on who possessed, i.e., physically controlled, the laundromat—or at the very least, on whether Apex possessed the property with the intent to exclude the Dais—at the time of the fire. Summary judgment, therefore, was premature.

A final point: Federal insists that by settling the Illinois negligence suit, Apex is precluded from litigating insurance coverage. The logic goes like this: (1) Apex conceded its premises liability under Illinois law by settling; (2) for a mortgagee to be liable in Illinois, it must have exercised dominion and control over the mortgaged property; (3) Pennsylvania uses an identical standard to define mortgagee in possession; and therefore (4) Apex must have been in control of the property under Pennsylvania law, too, making it a mortgagee in possession and triggering the policy's exclusion.

Federal's argument fails at step one. Settlement does not create a judicial ruling. Nor does it vindicate a plaintiff's theory of liability. Parties can settle for any number of reasons and the obligation to pay comes from the settlement itself (an agreement), not from one party's liability. The notion that a party cannot litigate coverage after settling claims brought

against it is not supported by the cases Federal cites. Instead, those cases explain an insured can expect reimbursement of a settlement made in "reasonable anticipation of liability" for covered damages, where the covered claim was the "primary focus" of settlement. *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 350 (7th Cir. 2010) (reviewing Illinois law); *Rosalind Franklin Univ. of Med. & Sci. v. Lexington Ins. Co.*, 8 N.E.3d 20, 39 (Ill. App. Ct. 2014). Those items—anticipation of liability, coverage, and primary focus—are litigated regularly post-settlement. Such is the case here.

### III. Conclusion

For all these reasons, we VACATE the district court's grant of summary judgment and REMAND for resolution of the factual disputes outlined herein.